## Case No. 1,125.

### BAXTER et al. v. LELAND et al.

[1 Blatchf. 526.] [1]

Circuit Court, S. D. New York. Oct. Term, 1849. [2]

SHIPPING—STOWAGE—CUSTOM OF TRADE—CARRIER'S LIABILITY.

1. Where an established and well known usage exists in a particular trade, in regard to the stowage of a general ship, both as to the manner of stowing and as to the different articles to be stowed together, one who ships goods by such a vessel is chargeable with notice of the usage and must give special instructions if he desires a change in the mode of stowage.

[Distinguished in The Fanny Fosdick, Case No. 4,641. Cited in The Colonel Ledyard. Id. 3,027; The Free State, Id. 5,090; Fleishman v. The John P. Best, Id. 4,861.]

2. Where such usage exists, a shipper who is chargeable with notice of it, and gives no special instructions, and whose goods are stowed in accordance with the usage, is deemed to have assented to the mode of stowage. and cannot, in case his goods are injured on the voyage in consequence of the mode of stowage, set that up as a ground of complaint, or as a foundation for depriving the owners of the vessel of their freight.

[Cited in Goddefroy v. The Live Yankee, Case No. 5,496; Lamb v. Parkman, Id. 8,020. Distinguished in The Fanny Fosdick, Id. 4.641. Cited in The Colonel Ledyard, Id. 3,027; Fleishman v. The John P. Best, Id. 4,861; The T. A. Goddard, 12 Fed. 177; The Chasca, 23 Fed. 159; The City of Alexandria, Id. 829; The Keystone, 31 Fed. 414; Hills v. Mackill, 36 Fed. 704; The Dan, 40 Fed. 692.]

[Appeal from the district court of the United States for the southern district of New York.

[In admiralty. Libel by Sylvester Baxter and others against Leland, Adams & Co. The district court rendered a decree for libellants. Baxter v. Leland, Case No. 1,124. Respondents appeal. Affirmed.]

This was an appeal from the district court, where Sylvester Baxter and others, owners of the ship Cleone, filed a libel in personam against Leland, Adams & Co., to recover the freight and primage on a quantity of flour transported for the respondents from New-Orleans to New-York in that vessel. The principal ground of defence was, that the cargo of the ship was improperly stowed, and that the flour was damaged during the voyage, in consequence of its being placed in the hold of the ship on the top of hogsheads of new sugar, and under sacks or bags of Indian corn. In reply, the libellants urged that the storage of the cargo was in consonance with the common and well known usage in the case of general ships engaged in freighting from New-Orleans to the northern Atlantic ports. The district court pronounced in favor of the libellants, and the respondents appealed to this court.

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]
[2] [Affirming Case No. 1,124.]

Erastus C. Benedict, for libellants.

Albon P. Man, for respondents.

NELSON, Circuit Justice. The evidence is conclusive in favor of the libellants, that the stowage of the cargo was according to the well known and well established custom and usage in the case of a general ship in the trade from New-Orleans to New-York, carrying the products of the country which are usually shipped from that port; and this, in respect not only to the manner of stowage, but also to the different articles and products stowed together in the hold of the vessel—such as the stowage of barrels of flour and bags of corn upon the top of hogsheads of sugar. The most experienced merchants, surveyors, and stevedores in the trade, with scarcely an exception, affirm the usage. The respondents are chargeable with notice of this usage and custom, and consequently must have known that their flour would be thus stowed in the absence of instructions to the contrary.

But, besides being thus chargeable with notice, it appears that the respondents were in fact aware of the usage, and had sent orders to their agents not to ship flour stowed upon hogsheads of sugar, thereby, impliedly at least, conceding the usage; and also, that instructions to the ship-owner were necessary, to ensure a change in the practice of lading. Several witnesses, who state that experience has shown that flour when stowed with sugar is subject to particular damage from heat and vapor arising from fermentation occasioned by the mixing of the drainings of the sugar with water in the hold of the vessel, add, that they have given standing instructions to their agents at New-Orleans, not to ship their flour with hogsheads of sugar.

It further appears, from some of the witnesses, that it is within the past year the discovery has been made, that flour stowed in the way complained of is subject to special damage from the drainings and vapor of the sugar; and that it is only within this period that orders have been given by some of the houses in the trade to change the mode of shipment. Mr. Sherwood, of the house of Suydam, Sage & Co., largely engaged in this trade, says, that a great deal of the flour received from New-Orleans previous to the last year arrived in a damaged state; but that, since ordering it not to be shipped with sugar or corn, it has arrived in better order. It appears to me, therefore, that under the strong and very decided evidence that this cargo was stowed as every other cargo of the kind is stowed in a general ship in this trade, and it being, of course, well known and understood by the respondents that their flour would be thus shipped unless they gave instructions to the contrary, they must be taken and deemed to have assented to the mode of shipment, and are not now at liberty to set it up as a ground of complaint, or a foundation for depriving the owners of their freight. The flour was shipped in the way in which they must have supposed it would be shipped, and in which the flour of others had always been theretofore shipped from New-Orleans to New-York, unless special directions were given to the contrary. If there was any fault, it was that of the trade and of the dealers engaged in it, including shippers, as well as ship-owners, surveyors, and stevedores; in a word, of all persons connected with or concerned in it.

Without, therefore, enquiring into the origin or cause of the damage, or determining the particular head under which it would properly fall were it not attributable to the stowage of the articles of flour and sugar in juxtaposition, with a view to exempt the ship from responsibility, but assuming that even the principal part arose from the stowage, as upon the evidence it probably did, yet, on the ground briefly stated, it seems to me it cannot be chargeable to the ship, even upon the most stringent principles applicable to the common carrier, regard being had to the weight and force of the evidence concerning the usage in the stowage of the vessel.

Decree affirmed.