84 U.S. 651
 21 L.Ed. 719
 17 Wall. 651
 THE STAR OF HOPE.
 October Term, 1873
 
 APPEAL from the Circuit Court for the District of California.
 Church & Clark libelled the ship Star of Hope, in the District court for California, for damages done to a quantity of nuts in bags and boxes, which had been shipped at New York on board of the said vessel, to be delivered to them at San Francisco. It was clearly shown on the trial that if nuts are stowed in the hold on this voyage they are very liable to be injured by sweat; that it is the almost invariable practice to carry them in the cabin, or cabin state-rooms, and to enter them on the bill of lading as to be thus carried; and that if they are carried in the hold they are sometimes inclosed in water-tight oil casks in order to keep them in proper condition. The packages in this case were all marked 'in cabin state-room,' and when they were delivered for shipment receipts were given by the receiving clerk of the vessel, specifying in the margin the marks of the goods, including the direction above quoted. But the bill of lading, which was received by the shippers after the parcels were delivered, omitted any allusion to this direction. It contracted simply that the goods should be delivered in San Francisco 'in good order and condition, dangers of the sea, fire, and collisions excepted.' The goods were placed in the hold without notice to the shippers, and having been injured on the voyage this libel was filed for damages.
 The District Court decreed in favor of the libellants; and the Circuit Court having affirmed the decree, this appeal brought the case here for review.
 
 Mr. C. Donohue, for the appellant:
 
 The only contract that binds the parties, and on which all parties are compelled to rely, is the bill of lading. The contract being in writing, that alone must govern. This was the decision of this court in The Delaware;[1] a decision the more authoritative since it was made, as the report of the case shows, after one of the fullest, ablest, and most learned arguments at the bar, on the other side of the question, which it was possible to make. That case also decided that a 'clean' bill of lading, that is to say, a bill which was silent as to the place of stowage, imports a contract that the goods are to be stowed under deck. But it has never been decided, nor, so far as we know, supposed that such a bill imports a contract that goods are to be stowed in the cabin state-room; a place not appropriated to the stowage of goods at all.
 As, therefore, no particular place was specified for the stowage of the goods, they were sufficiently stowed when they were stowed in the ordinary place—the place where, according to The Delaware, the bill imported that they should be stowed, i. e., anywhere between decks in the hold.
 The 'sweating' was a danger of the sea; an excepted danger, therefore, under the bill of lading.
 
 Mr. C. E. Whitehead, contra:
 
 1. A clean bill of lading imposes an obligation to store under the deck. This, we agree with the other side in saying, was decided in The Delaware. Now the agreement to store in the cabin is not an agreement in contradiction to that implied obligation. On the contrary, it is ancillary to it, and aids it in a point upon which the bill of lading is silent. A written contract may always be thus aided.[2]
 2. The libellants proved 'a custom of trade' to store nuts in the cabin, and having shown that nuts stored otherwise would be injured, the master is chargeable with negligence for storing in the hold, whether he gave a bill of lading or not, or whether there was an express agreement or not.[3] In Blakie v. Stembridge,[4] an action was brought by a shipper for damages occasioned by sweat on a voyage from China, by reason of improper stowage. The court held that the question of negligence would be governed by the custom of trade, and if the goods were stowed according to the customary way in that particular trade, the vessel would be absolved, otherwise not.
 3. The receiving clerk of the vessel when the nuts were delivered for shipment, gave what amounted to a receipt, that they were to be carried 'in cabin state-room.' Given as this receipt was, it must be considered as so far forming part of the bill of lading, that the latter must be read by its light. Contemporaneous written documents are to be construed together.[5]
 Indeed, the court, on trial, could at any time have amended the bill of lading, as was done in Chouteaux v. Leech,[6] in regard to anything omitted therefrom through a clerical error, and contrary to the understanding of the parties.
 Mr. Justice BRADLEY delivered the opinion of the court.
 
 
 1
 The claimant insists that the bill of lading is the only contract binding on him, and as that did not specify any particular place for the stowage of the goods, they were properly stowed between decks in the hold.
 
 
 2
 This is not a sufficient answer to the libellants' case. The contract of the bill of lading was, that the goods should be delivered in San Francisco 'in good order and condition, dangers of the seas, fire, and collisions excepted.' The defence is to the effect that 'sweating' is one of the dangers of the seas. But if the sweating be produced in consequence of negligent stowage, the claimant is precluded from setting up the defence. If costly mirrors are stowed amongst loose articles of hardware, or if a case inclosing valuable statuary, and marked 'This side up with care,' is placed upside down amongst a lot of pig-iron, the claimant could hardly contend that he is protected from responsibility by the clause relating to the dangers of the seas. In this matter, as in all others, due care and its opposite, negligence, are relative terms, having respect to the nature of the duty to be performed, the knowledge communicated to the party to be charged, and the prevailing usages of the business. In view of the almost invariable practice as to the stowage of nuts on this voyage, of the well-known fact that if stowed in the hold they are extremely liable to be injured by sweat, and of the marks and directions on the packages in question in this case, it was culpable negligence in the master of the vessel to stow them in the hold. If he could not stow them as directed, he should, at least, have given notice to the shippers.
 
 
 3
 This view of the case is sufficient to dispose of it without deciding whether the evidence in reference to the stowage of nuts established a custom of the trade in the proper sense of that term, or whether the shipping receipts were a part of the contract of affreightment.
 
 
 4
 DECREE AFFIRMED WITH INTEREST AND COSTS.
 
 
 
 [1]
 14 Wallace, 579.
 
 
 [2]
 Bonney v. Morrill, 57 Maine, 372; Blossom v. Griffin, 13 New York, 569; Witbeck v. Waine, 16 Id. 535; Filkins v. Whyland, 24 Id. 338.
 
 
 [3]
 Angell on the Law of Carriers, 4th ed., 187, and cases there cited; Lamb v. Parkman, 1 Sprague, 343.
 
 
 [4]
 5 Jurist, New Series, 1128.
 
 
 [5]
 Hunt v. Livermore, 5 Pickering, 395.
 
 
 [6]
 18 Pennsylvania State, 224.