## THE KEYSTONE.[1]

### MENENDEZ and others v. THE KEYSTONE, etc.

*(District Court, S. D. New York. December 31, 1886.)*

1. SHIPPING—CARGO—APPARENT CONDITION—SECRET VICES.
    The master is responsible only for the apparent condition of the cargo when taken on board, not for its secret vices or defects.
2. SAME—CHARTERER—STEVEDORE—BAD STOWAGE.
    The ship is liable for bad stowage by a stevedore employed by a charterer, where her officers retain control over the disposition of the cargo.
3. SAME—PROVISIONS AND HOOPS—SWEAT—STOWAGE—NEGLIGENCE—STATEMENT OF CASE—DAMAGES.
    Part of the cargo of the brig Keystone, consisting of provisions, was damaged by the sweating of hoops, etc., which formed another part of the cargo

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

The evidence showed that it was customary to carry the two articles as parts of the same cargo. It also appeared that the sweating doubtless arose in part from the general unseasoned condition of the hoops, which condition the master had no means of knowing before the cargo was shipped. The hoops being apparently lawful cargo which the master had no right to refuse, and which the charterers required him to take, and which is customarily taken with provisions, *held*, that the master could not be charged with negligence for taking them on board. It subsequently appearing that the proper place to stow provisions in such a mixed cargo was in the hold, in the after-part of the ship, and not in the main hatchway, and that the master knew the quantity of provisions to go aboard, *held*, that the ship was liable for injury by sweating to bags of flour stowed in the hatchway, in excess of any injury caused by sweating to similar bags stowed in the proper place below.

4. ADMIRALTY—AMENDMENT AT TRIAL—WHEN DISALLOWED.

An amendment of the libel will not be allowed at the trial, introducing a wholly new ground of claim, where proper evidence on that subject has not been taken and the defendant's witnesses are gone.

*Geo. A. Black*, for libelant.
*Benedict, Taft & Benedict*, for respondents.

BROWN, J. This libel was filed to recover damages for injury to a quantity of provisions which were shipped on board the brig Keystone in January, 1885, to be delivered at Caibarien, Cuba, and were damaged, as the libel charges, through "bad stowage, and the carriage of unsuitable and improper cargo in said vessel, or the taking off of the hatches improperly." The brig was loaded by the charterer, to whom she had been chartered, "for a full cargo of lawful merchandise under and on deck." After she was about two-thirds loaded with a cargo of "cooperage," so called, consisting of hoops and shooks of barrels, the provisions were put on board, part of which was flour in bags. These were all lawful merchandise, and when received on board the master supposed they all belonged to the charterer, and it was not until the bills of lading were presented that he learned that the provisions were for several other shippers. The vessel sailed on the seventeenth of January, and reached Caibarien on the second of February. On the night of the twenty-ninth of January, when near the Bahamas, a great deal of heat as well as steam was found between-decks and below, through the steaming and sweating of the cargo; and the provisions were thereby considerably damaged. Several of the witnesses testified that the damage was from sea water, and the libel charges that the hatches were improperly opened. The proof shows, however, that the hatches were not opened until the 30th; and at the close of the cause the opposite charge was made, that ventilation ought to have been given earlier by opening the hatches to diminish the heat and sweating of the cargo. The master testified, however, that the weather was such that he could not safely have opened the after-hatches; and as the provisions were aft, they certainly were not injured by the opening of the forward hatch on the 30th. The master's statement that he could have opened the after-hatch if he had wanted to, is subject to the previous qualification that it was not safe on account of the water and rough weather.

I have no doubt that the damage to the provisions arose from the

sweating of the cargo and the heat generated from the presence of the cooperage when going from a cold to a warm climate. Sweating is, however, a peril of the seas, falling within the exceptions of the bill of lading, unless it appear to have been caused by the negligence of the ship. 1 Pars. Shipp. & Adm. 261; *The Star of Hope,* 17 Wall. 651.

The averment of the libel that the cargo was improperly stowed is not sustained by the proofs. The strong weight of proof is to the effect that not only is cooperage like this, consisting of hoops and shooks, a common cargo, but that such cargo is almost always carried along with provisions in the winter season, and not infrequently as much in proportion as was carried by the Keystone. If hoops are dry, no danger is apprehended from their presence; if not dry, they may generate steam and heat, and cause injury.

It being proved to be customary to take such cargo to Cuba, the libelant's assent thereto is presumed. *Baxter* v. *Leland,* 1 Blatchf. 526. This presumed assent would not extend beyond the customary proportion of cooperage, if any such limit by custom were established. But the evidence does not establish any customary limit, nor show, as I have said, that the amount taken aboard was in excess of what is frequently taken. Nor would this presumed assent of the shipper justify the master in taking aboard hoops apparently unfit from wet or want of seasoning; for this would constitute negligence in the master. But the master is responsible for the cargo's apparent condition only; not for its secret vices or defects. I do not think there is any sufficient evidence of negligence in this case on the part of the master in respect to the condition of the hoops taken on board. A small portion was wet by rain, which he refused to take on board until it was apparently dry; and this, although at the time he supposed all the cargo was to be shipped by the charterer, who, having employed the stevedore, would, therefore, have no redress against the ship or master from any defects in the condition of the cargo, whether apparent or not. The master's objections under such circumstances, are, therefore, evidence of his entire good faith.

The mere fact that much steam and sweat arose in the cargo during the voyage does not of itself indicate that the master should not have received it on board. So much sweat and heat was unusual and could not have been anticipated.

One of the libelant's own experts was asked:

"*Question.* If they steamed on the voyage so that the captain couldn't burn a lamp in his cabin, would that indicate to you what the condition was when they were taken in? *Answer.* I hardly think it would. *Q.* Can you from your experience state whether it was proper or not to carry bags of flour in conjunction with a quantity of hoop-poles and old sugar hogshead shooks, leaving New York in the month of January? *A.* If they were dry they could be stowed away aboard of a vessel perfectly safe. *Q.* And if they were not dry? *A.* Improper."

It is impossible to find, as it seems to me, that this steaming was occasioned simply by the wetting of the small portion of the cargo of hoops that were kept upon the wharf a day or two to be dried, and

were apparently dry when loaded. To what extent the heat and sweat arose from the change of climate, and how much from the cooperage, is uncertain. So far as the sweating was produced by the hoops it must have been mainly through their general unseasoned condition, which the master had no means of knowing or determining. The cargo being apparently lawful cargo, which he had no right to refuse, and which the charterers required him to take, and being customarily taken with provisions. I think the master cannot be charged with negligence for taking hoops not sufficiently seasoned, if such was the fact, when he had no means of knowing their condition. In the case of *The Helene*, the privy council says, in reversing the decision below, (L. R. 1 P. C. 239:)

"If the ship-owner were ignorant of the consequences of taking such a cargo [wool, rags, and oil] we do not think it amounted to culpable negligence on their part to stow, in the only place they could be stowed, the goods which under the charter-party the charterers had a right to insist, and did insist, should form a part of the cargo."

So, here, the master was not a guarantor of the latent condition of the hoops. The hoops being by custom a proper cargo to be carried with provisions, and the hoops being apparently in proper condition, the master was bound to receive them, and is not chargeable with negligence or wrong. The injuries that arose from the internal condition of the hoops, if they were not sufficiently seasoned, are chargeable either to the perils of the voyage, or to the charterer who shipped them.

The libel should therefore be dismissed.

Upon further argument it appears that the captain's testimony was misunderstood by the court as respects his ignorance before loading of the quantity of provisions and flour to be taken aboard. It now appears that he knew this at the outset; and that some bags of flour were put in the main hatch because sufficient space had not been left for all the flour below. The master and the stevedore both state that the after-part of the ship below was the most suitable place for flour in bags; and this was doubtless so, as the hatches were battened down and ventilation aft at that season was difficult. Knowing what quantity of flour in bags was to be taken on board, and that if there were much heat and steam upon the voyage arising from change in climate, irrespective of any unseasoned condition of the hoops, for which he is not chargeable, the bags would probably be more injured by such sweating in the hatch, the master took the risk, as respects third persons, of providing sufficient room below as the proper place for flour in bags, as well as for the other provisions. As respects the charterer, whose goods he at first supposed they were, he might not have been liable; since the stevedore who stowed the cargo was employed by the charterer. The inference in this case is that the shippers dealt with the charterer only, and not directly with the master, any further than to receive the bills of lading which the charter required the master to sign for all cargo put on board. Although the presentment of bills of lading by other persons as owners of the flour and provisions may have been a surprise to the master, there was still

opportunity before he sailed for the discharge of his duty to the shippers and to the ship as respects the storage of flour in the place most suitable for it with a cargo of cooperage.

The ship was, I think, liable to the shippers for improper stowage, no matter by whom the stevedore was employed, or whosoever may have been liable personally. The master's mate evidently retained some control over the disposition of the cargo. *Richardson* v. *Winsor*, 3 Cliff. 404–407; *Sandeman* v. *Scurr*, L. R. 2 Q. B. 86; *The T. A. Goddard*, 12 Fed. Rep. 174, 184. The master was bound, therefore, to avoid the particular risk of damage from stowing the bags in the hatch, and either to make provision for those bags in the proper place below, or else give notice and obtain the assent of the shippers to their remaining there, or else to reject the goods until properly stowed by the charterer's stevedore. *The Star of Hope*, 17 Wall. 651; *Peek* v. *Larsen*, L. R. 12 Eq. 378. Not having done so, I think the ship is answerable for any damage arising to the bags stowed in the main hatch in excess of that happening to the similar bags stowed below, if there was any such excess.

The amendment of the libel asked upon the trial cannot be allowed. It introduces a new and somewhat inconsistent ground of claim, to which objection is rightly made; since the evidence in reference to such a claim has not been taken, and the witnesses for the defense are gone.

A reference may be taken to ascertain the excess of damage, if any, as above indicated, and the question of costs will be reserved until the coming in of the report.