## THE DAN.

### STEAM-SHIP CO. CARL *v.* HAGEMEYER.

### HAGEMEYER *et al. v.* STEAM-SHIP CO. CARL.

**(*District Court, S. D. New York.* December 20, 1889.)**

**1. SHIPPING—DAMAGE TO CARGO—CHARTERED VESSEL—COMMON CARRIER.**
A vessel chartered to transport a specific cargo only is not a common carrier, and hence is not an insurer of the safe delivery of the cargo, and can be held for damage to cargo only on proof of negligence.

**2. SAME—NEGLIGENT STOWAGE—FOREIGN VESSEL.**
A vessel loaded in a foreign port cannot be charged with negligence in stowing cargo, if she has employed all the known and usual precautions to insure safe transportation which the nature of the cargo requires, having reference to the usages of the foreign country, and the practice and state of knowledge as to loading there prevailing.

**3. SAME.**
The steam-ship D. delivered a cargo of grain which she had been specially chartered to transport, and part of which was damaged through contact with an iron bulk-head between the cargo and the engine-room. The evidence showed that the construction of the ship was not unusual at Copenhagen; that the grain was stowed in accordance with the custom of Copenhagen, where this cargo was loaded; and that a practice of sheathing the iron bulk-head with wood, the lack of which in this case was the negligence complained of, is not in use in Denmark, and only to a limited extent in New York. *Held*, that the vessel was liable only for negligence, under the circumstances of her employment, and that no negligence was proved, the shippers apparently acquiescing in the stowage; but, on the meager evidence as to usage at Copenhagen, the libelant for damage to cargo was allowed to discontinue without prejudice, and the vessel was held entitled to her freight in full.

In Admiralty. Cross-suits for freight and damage to cargo.

*Wing, Shoudy & Putnam,* (*C. C. Burlingham,* of counsel,) for the steamship company.

*H. D. Hotchkiss,* for cargo.

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

BROWN, J. The above are cross-libels,—the first to recover freight on a cargo of barley shipped on the steam-ship Dan, at Copenhagen, in February, 1888, to be delivered in New York; the second, for damages to the barley, through alleged negligence in stowing it against an iron bulk-head abaft the engine-room, whereby it became injured through heat. As the Dan was chartered to transport this specific cargo only, she was not a common carrier. *Sumner* v. *Caswell*, 20 Fed. Rep. 249. She was therefore not an insurer of the safe delivery of the cargo, and can be held only upon proof of negligence. The negligence alleged is that she was not properly fitted for the voyage, and that she did not cause some additional wooden sheathing, or other suitable protection against heat, to be interposed between the grain and the iron bulk-head that separated it from the engine-room. On arrival, that portion of the grain which was against the iron bulk-head was found heated and caked, remaining, as described by some of the witnesses, in a perpendicular wall when the other grain was removed. Over the line of the keel there was a chamber and tunnel inclosing the shaft running aft from the engine-room, and communicating with the latter by an open door. Along and around this chamber and tunnel the barley showed the same heated and caked condition much further aft, extending in all some 14 feet. These circumstances satisfy me, notwithstanding the testimony of the witnesses for the ship of their belief to the contrary, that the caked condition of the barley arose in part from the heat received through the engine-room and bulk-head. Whether there was not also some dampness of the barley, that made it especially susceptible to a moderate degree of heat, it is impossible to determine, though that seems probable. There is testimony, however, that the general condition of the barley was good.

The Dan had been for some time previous engaged in transporting grain, mainly in the Baltic and Black sea trade. She was thoroughly equipped for this purpose. Her voyages were of from five to ten days. She was accustomed to stow her load as in the present case, and had never had her cargo damaged before. She had not previously brought barley or other grain across the Atlantic. Her present voyage occupied 21 days, 2 of which were consumed in putting into Plymouth for coal, as she was allowed to do by her charter. She had no partition separating her boilers from the engine-room, but they were 14 feet forward of the iron bulk-head in question, and the room was well ventilated by air-shafts and an upward draught over the boilers. This construction was not improper or unusual in Danish ships. Vessels of the Thingvalla Line were constructed in the same way, and have been accustomed to carry grain from the United States to Havre, stowed as the barley upon the Dan was stowed, without injury.

The question is wholly a question of stowage. There is no doubt of the general good construction and fitness of the Dan; and in stowing she cannot be charged with negligence, if she employs all the known and usual precautions to insure safe transportation, having reference to the nature of the cargo. *The Titania*, 19 Fed. Rep. 107, 108; *Clark* v. *Barnwell*, 12 How. 283; *Baxter* v. *Leland*, 1 Blatchf. 526; *Lamb* v. *Parkman*,

1 Spr. 343. This rule, as respects a vessel chartered in a foreign country and loaded there, must be applied with reference to the usages of that country, and the practice as to loading there prevailing. In this port, in consequence of some cases of damage to grain stowed against an iron bulk-head on European voyages, a practice has arisen within the last three or four years on the vessels of the Wilson Line, and on some others, to separate the grain from the iron bulk-head by some temporary sheathing; but the evidence on the part of the Dan shows that that practice even here is quite limited, and not general, or amounting to anything like a usage, and that, in the absence of such additional protection on vessels constructed similarly to the Dan, no damage upon European voyages has been commonly experienced. The inference from these facts is, it seems to me, very strong that, in the few cases in which such damage has arisen, it has come from some inferior condition of the grain itself; such perhaps as slight dampness, or lack of thorough curing, not perhaps noticeable to ordinary inspection, but sufficient, when combined with slight local heat, to result in damage; and I think such was the fact in this case. The custom in Copenhagen, as respects the loading and stowing of chartered vessels, is different from our own. The proof shows that there are official persons who supervise and determine the proper stowage; that these persons are usually called on by the merchants for that purpose, and may be called by the ship's officers; that in this case two such persons approved the stowage of the Dan; and that the stowage was in accordance with the usual custom of that country. There is no evidence to the contrary, nor any indication that any such additional sheathing or protection had ever been in use in Denmark, or was known to be used, or required, as a reasonable precaution for the safety of grain cargoes of any kind. In New York, where the shipment of grain cargoes is much more frequent, such a practice as above stated is quite limited, and even to this extent has sprung up only within the last three or four years. Under such circumstances, to hold this vessel liable for negligence in stowage will, it seems to me, be holding her to a degree of responsibility greater than in any reported case other than cases of common carriers, and beyond that with which she is fairly chargeable. *Baxter* v. *Leland, supra.* The practice at Copenhagen, also, whereby the merchant shippers seem to exercise as much care and control as to stowage as the ship herself, would seem to debar them equitably from setting up such a claim against the ship; since they had an equal power over the stowage, and virtually acquiesced in the mode adopted in this case. The evidence on this subject is possibly imperfect, and I may be mistaken in my interpretation of it. The question of stowage could doubtless be tried much more satisfactorily in Copenhagen than here; and, in view of the meager evidence upon this subject in the present case, I think it right to allow the cargo-owners to discontinue their present suit, if they choose to do so, without prejudice to any action in Copenhagen for the same cause which they may be advised to bring. In the libel for freight the libelants are entitled to the balance of the amount unpaid, with interest and costs.