## THOMPSON v. GEO. W. BUSH & SONS CO.

(District Court, D. Maryland. March 17, 1894.)

CHARTER PARTY—EMPLOYMENT OF OBJECTIONABLE STEVEDORE.

Under a charter party requiring the charterer to furnish a full cargo of lumber to be loaded by the vessel, the shipper has no right, in the absence of express stipulation or established usage, to refuse to furnish the cargo because of the employment by the master of a stevedore who, although competent and experienced, is personally objectionable to the shipper.

In Admiralty. Libel by Abraham P. Thompson, master of the schooner William Neely, against the George W. Bush & Sons Company, for breach of a charter party.

Robert H. Smith, for complainant.

Gans & Haman, for respondent.

MORRIS, District Judge. The controversy in this suit arises from a dispute in regard to the employment of a stevedore to load a cargo of lumber in the port of Savannah. By a charter party made in the city of New York 26th of March, 1892, the George W. Bush & Sons Company, of Wilmington, Del., chartered the schooner William Neely for a voyage from Savannah to New York, and engaged to furnish to the vessel at Savannah a full and complete cargo of re-sawed yellow pine lumber, under and on deck, to be carried to New York at a certain rate of freight per 1,000 feet for all delivered; the cargo to be received and delivered alongside, within reach of the vessel's tackles, at the ports of loading and discharging; at least 40,000 feet per day (Sundays excepted) to be allowed for loading, and dispatch in discharging, and for every day's detention of the vessel by default of the charterer or its agent demurrage to be paid at the rate of $85 per day. The master of the vessel was directed by the charterer to report his arrival at Savannah to the Georgia Lumber Company, who would furnish him with cargo. On May 2, 1892, the schooner being in Savannah, and ready for cargo, the master reported to the lumber company, and was shown the wharf at which he was to load, and the lumber he was to take on board, the greater part of the cargo being then ready upon the wharf. He mentioned to the wharf manager of the lumber company that he had engaged a stevedore named Daniels, and was told that the lumber company objected to Daniels, as they had had trouble with him. The master replied that he was entitled to select his own stevedore, and that he had already contracted with Daniels, that he had also employed him when loading in Savannah three or four weeks before, and preferred him, and meant to have him. Daniels and his gang of stevedores went to work, and made the vessel ready, and had put on board 16 pieces of timber, when, by orders from the lumber company, the delivery of the lumber was forbidden, and the stevedores ordered off the lumber company's wharf. All efforts to come to any agreement proved fruitless. Day after day, the master notified the lumber company that his vessel was ready for the cargo, and that

his gang of stevedores were waiting to stow it. . Day by day, the lumber company replied that if the master would employ any stevedore, except Daniels, he could have the lumber, but that he could not have it if Daniels was to have anything to do with loading it; and the lumber company offered to pay any difference in any other stevedore's charges. Upon the master making an effort to proceed with the loading, Daniels was arrested, and fined for trespassing on the wharf; and the master having got into a wordy altercation with some other lumber merchants, who were supporting the officers and the lumber company in their contention, he was also arrested, tried, and fined. Finally, upon request of the lumber company, the harbor master removed the schooner away from the lumber company's wharf, and on May 24th the master rechartered at a less rate of freight.

Stowage of the cargo is primarily the duty of the shipowner and the master. The shipper places the lumber within reach of the ship's tackles. At that point the shipper's duty ends. The ship pays the cost of loading, and is responsible for damage to the cargo by reason of negligent or unskillful handling or stowage. Richardson v. Winsor, 3 Cliff. 395, Fed. Cas. No. 11,795; The Keystone, 31 Fed. 412; The Alex. Gibson, 44 Fed. 371; Sandeman v. Scurr, L. R. 2 Q. B. 86; Scrutton, Charter Parties, art. 50, p. 94; Sack v. Ford, 13 C. B. (N. S.) 90. The requisites for the stowage of a cargo of sawn lumber are of the simplest character. The lumber cannot be injured unless by the roughest and most unskillful handling, or by wantonly cutting it. The shipowner is interested that the largest possible quantity shall be put into the vessel, so as to earn the greatest possible amount of freight, and also that it shall be stowed so as not to shift and list the vessel. The quantity which the vessel will contain depends a good deal on the skill and fidelity of the stevedore. The charter party in this case is silent as to who shall nominate the stevedore. As between the ship and the charterers, so far as it depends upon the charter party, there can be no question that it was the master's duty to pay the stevedore, that he was answerable for the stevedore's performance of the work, and that it was his right to select him.

It is urged in behalf of the respondents that, by the usage of the lumber trade in the port of Savannah, it is the shipper of the lumber who has the right to select the stevedore. This usage is not proven. It is shown that during the last four years the largest shippers of lumber in that port have strongly desired and striven to establish that usage, and to compel shipmasters to acquiesce in their claim of right to select the stevedore, but the proof falls far short of proving general acquiescence of shipmasters in such a practice. It appears from the proof that, four or five years before the occurrence in this case, there was in the port of Savannah a strike of stevedores, which injured the lumber business, and caused the lumber shippers great anxiety, and that since that occurrence they have, as far as they have been able, taken the loading of lumber vessels into their own hands, by establishing firms in that business, in which they have an interest and can

control, and also by blacklisting those stevedores who were prominent in the strike, and preventing their getting employment. When the shippers of lumber have also an ownership in the vessel, they compel the master to take the stevedores selected by them; and, when they have not such ownership, they endeavor by other means to prevail upon the masters to accept a stevedore upon their nomination. It is proven, however, that the masters still contend that, as they employ and pay the stevedores, they are entitled to select them; and in a great many instances, particularly with the smaller shippers, they still insist upon doing so.

It has been urged on behalf of the respondent that Daniels was not a competent and trustworthy stevedore, but the proof fails to support this contention. It is shown that for a great many years he has been known as among the best lumber stevedores of the port, and was duly licensed; and numbers of masters of vessels carrying lumber from that port have testified in this case that they prefer him, and employ him constantly, and have never had any reason to complain of him. He had stowed a lumber cargo on the William Neely on her previous voyage from Savannah, a few weeks before the one in question, and the master had then arranged with him to load his vessel on her next trip. It is true that he was objectionable to the shippers of this cargo, the Georgia Lumber Company, and the president of that company had declared that Daniels never should load a cargo which they furnished. This was principally because they suspected him of having been in the strike four years before, although Daniels denied it, and because he had once stopped off in the loading of a vessel consigned to them, complaining that he had been unwarrantedly interfered with, and once had left a car of their lumber on a wharf in order to take advantage of a tide to get the vessel to another wharf, and once had been accused by them of improperly cutting some sticks in order to stow them. These were all of them small matters of irritation, susceptible of explanation, and which no doubt would have been overlooked but for the fact that the officers of the Georgia Lumber Company, together with other lumber merchants of Savannah, determined to get the stevedoring of lumber cargoes into hands where they could control it, so as to prevent strikes, and had determined to force all other stevedores out of the business.

The testimony leaves no doubt that Daniels was a competent and experienced stevedore, of established reputation, and the one preferred above all others by many of the shipmasters loading lumber at Savannah. The matter resolves itself, then, into the question whether, under such a charter party, in the absence of express stipulation,—in the absence of established usage,—the shipper of the cargo has a right to say he will not furnish the cargo if the master employs a stevedore who, although competent and experienced, is personally objectionable to the shipper. I can find no warrant for a refusal to furnish cargo based upon this ground. The shipper does not employ the stevedore, nor pay him. He is not responsible for his want of skill, nor his mistakes. The shipper's duty is performed when he puts the sticks of timber

within reach of the vessel's tackles, and after that the responsibility rests with the ship.

It is urged that, if the lumber is found to be broken or split when delivered from the vessel to the purchaser, the purchaser generally makes reclamation on the shipper, and that it is difficult to prove that the defect is the result of careless stowage, and the shipper generally has to suffer the loss. This may be a good reason why the shippers should endeavor to control the nomination of the stevedore; and, if it is sufficiently important, they can accomplish it by insisting that the purchaser of the lumber shall stipulate in the charter party that the vessel shall employ the shipper's stevedore, or any one satisfactory to him. This is a very usual stipulation, and is found in nearly all foreign charter parties. The charterers having failed to have inserted in the charter party a stipulation that the stevedore should be satisfactory to the charterers or the shippers, they cannot now have the same benefit as if the provision had been inserted. Culliford v. Gomila, 128 U. S. 135–158, 9 Sup. Ct. 50. The case comes to this: The respondent, who chartered the schooner, contracted to furnish her at Savannah with a full and complete cargo of lumber. The lumber was tendered, but with a condition annexed which was not warranted by the charter party, nor by any usage of the port. It was, in fact, refused, unless the master would submit to a requirement which was not in the charter party, or sanctioned by usage. The master having already, in good faith, contracted with a competent stevedore selected by himself, he could not be compelled to dismiss that stevedore, as a condition of the cargo being furnished to him. There was therefore a refusal to furnish the cargo in compliance with the stipulation of the charter party, and the master was not obliged to accept it with the condition annexed to the offer. Hudson v. Hill, 43 L. J. C. P. 273. In my judgment, the libelants are entitled to recover from the respondent the loss of freight upon the recharter at a less rate, and damages for the delay caused by the failure to furnish cargo.