## THE WILDENFELS.

### THE ROVER.

(Circuit Court of Appeals, Second Circuit. May 19, 1908.)

#### No. 238.

1. SHIPPING—LOSS OF GOODS FROM LIGHTER—LIABILITY.

Evidence *held* to sustain the finding of a trial court that loss of cargo from a lighter, which was being loaded from a ship, due to the rolling of the lighter, was not caused by its negligent handling or defective condition, but by some external cause for which it was not liable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 484.]

2. ADMIRALTY—PLEADING—AMENDMENT.

It was at least within the discretion of the court to refuse leave to amend a libel against a lighter to recover for loss of cargo on the ground of negligence, after the evidence had been concluded and the argument begun, by adding an allegation that the lighter was a common carrier, thus changing the action from one in tort to one in contract, and creating a new issue, to which the evidence had not been directed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, §§ 519, 525.]

3. SHIPPING—"COMMON CARRIER"—"PRIVATE CARRIER"—LIGHTER HIRED TO CARRY GOODS OF SINGLE OWNER.

Under the rule of the American courts of admiralty a lighter hired exclusively to convey the goods of one person to a particular place for an agreed compensation is not a "common carrier" with respect to such goods, but a "private carrier," and liable only as a bailee for hire.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1313–1319; vol. 8, p. 7607; vol. 6, pp. 5569–5570.

Carriers by water, see note to Wade v. Lutcher & Moore Cypress Lumber Co., 20 C. C. A. 535.]

Appeal from the District Court of the United States for the Southern District of New York.

The decree of the District Court dismissed a libel filed by the American Manufacturing Company against the steamer Wildenfels and the lighter Rover for damages to a cargo of jute discharged from the steamer to the lighter and lost overboard by the rolling of the latter while being loaded at a berth at pier No. 3, Bush's Stores, South Brooklyn.

Wallace, Butler & Brown, for appellant.
Wing, Putnam & Burlingham, for the Wildenfels.
James J. Macklin and La Roy S. Gove, for the Rover.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. We are satisfied that the District Court correctly disposed of this controversy. The principal questions were of fact, relating to the construction, management and mooring of the Rover and the cause of the leak and the rolling, which resulted in the loss of the cargo. With two exceptions all of the witnesses were examined in the presence of the district judge and his finding that the Rover was not in fault is fully sustained by the proof. Surely it cannot be said that the finding is so clearly against the weight of evidence as to warrant this court in setting it aside. Even without direct proof it would seem probable that the heavy pounding and violent rolling observed about 9 o'clock was produced by some external cause. When to this is added the presence of surf in the slip and a large steamer passing close to the pier, we are not surprised that the judge thought it unnecessary to indulge in speculation and conjecture as to the proximate cause of the disaster. The burden was on the libelant to prove the negligence alleged with great particularity in the libel, and it has failed to sustain the burden. The libel was properly dismissed as to the Wildenfels. She was not shown to be at fault.

At page 94 of the record appears the following:

"Testimony closed. Counsel summed up the case. In the course of the summing up Mr. Brown asked leave to amend the libel 'so as to conform with the proof, and allege that this lighter in question was a common carrier.' Mr. Macklin: I object. The Court: You cannot amend your libel now."

Error is assigned of this refusal. Although the utmost liberality, consonant with the rights of the parties, should be allowed in the matter of amendments to pleadings in admiralty, we know of no precedent for an amendment, so radical as the one here proposed, after the testimony is closed and the advocates have begun their summing up. The proposed amendment sought to change a cause of action ex delicto to one ex contractu, or to add the latter to the former. In any view, it changed the character of the action in a particular so vital that the claimants may well have been wholly unprepared to meet it. If the libel as filed originally had alleged a breach of a contract of carriage or if an amendment had been seasonably allowed, the course of the litigation would, in all probability, have been radically different and might have been settled on the pleadings. The libel was drawn by one of the most accomplished pleaders at the admiralty bar, it was based solely on negligence and the proofs on both sides were directed to this issue. Had the claimants understood that it was proposed to enforce against the Rover the rigorous obligations of a common carrier, it is fair to assume that their proof would have been directed to this issue and not to the issue tendered by the libel. The refusal to permit the amendment at the time the motion was made was, to say the least, discretionary with the trial judge and error cannot be predicated of his ruling in this regard.

161 F.—55

A motion was made in this court to amend the libel by alleging that the Rover received the cargo and undertook the transportation of the same as a common carrier. The notice for this motion was served March 4, 1908, 33 days after the filing of the apostles. As the admiralty rules of this court provide that such motions must be made within 15 days from such filing it would seem that this motion was made too late. Benedict's Admiralty (3d Ed.) p. 425, § 633, rule 7. Mr. Benedict, referring to the allowance of amendments, says (section 483):

"The whole subject rests entirely in the discretion of the court, as well in relation to the relief to be granted, as to the terms on which it shall be granted."

In The Thomas Melville (D. C.) 31 Fed. 486 (C. C.) 34 Fed. 350, Judge Brown says:

"To permit an amendment by averring substantially a new cause of damage at the trial, where reasonable objection appears, cannot be allowed. As a rule it would be impolitic and unjust. McKinlay v. Morrish, 21 How. 343, 16 L. Ed. 100; The M. M. Caleb, 10 Blatchf. 467, 471, 472, Fed. Cas. No. 9,683. Such an amendment was recently denied in the case of The Keystone (D. C.) 31 Fed. 412."

See The Iona, 80 Fed. 933, 26 C. C. A. 261, and cases cited.

But irrespective of these considerations we are of the opinion that the Rover was not, pro hac vice, a common carrier. It is true that her owner was in the lighterage business and was in the habit of taking goods for any one who wanted lighterage done. She had, however, no regular route, did not carry between well known termini, and, on the occasion in question, was engaged to carry, and had on board only, the jute of the libelant. She was not a general ship, but was employed for this business exclusively, no one else had a right to put a pound of freight aboard her. She became a private carrier and liable only as a bailee for hire. Her owner was under no legal obligation to carry this jute, he could have refused this and all other cargoes had he seen fit to do so and no liability would have attached to his refusal.

In 1884, Judge Brown in Sumner v. Caswell (D. C.) 20 Fed. 249, decided, following Lamb v. Parkman, 1 Spr. 343, 353, Fed. Cas. No. 8,020, that a ship hired for a specific voyage to carry a particular cargo for the charterers, is not a common carrier but a bailee for hire and bound to exercise only ordinary skill and care. This rule has recently been reasserted and affirmed by this court in the case of The Fri, 154 Fed. 333, 338, 83 C. C. A. 205, 210, where the court says:

"When a charter party gives to the charterer the full capacity of the ship, the owner is not a common carrier, but a bailee to transport as a carrier for hire."

Mr. Moore, in his work on Carriers, says, at page 20:

"According to all the authorities, the essential characteristics of the common carrier are that he holds himself out as such to the world; that he undertakes generally, and for all persons indifferently, to carry goods and deliver them, for hire; and that his public profession of his employment to be such that, if he refuse, without some just ground, to carry goods for any one, in the course of his employment and for a reasonable and customary price, he will be liable to an action."

In Fish v. Chapman, 2 Ga. 349, 353, 46 Am. Dec. 393, it was held that the liability to an action for a refusal to carry is the safest criterion of the character of the carrier.

In Allen v. Sackrider, 37 N. Y. 341, the Court of Appeals of New York, at page 342, says:

"The employment of a common carrier is a public one, and he assumes a public duty, and is bound to receive and carry the goods of any one who offers. 'On the whole,' says Prof. Parsons, 'it seems to be clear that no one can be considered as a common carrier, unless he has, in some way, held himself out to the public as a carrier, in such manner as to render him liable to an action, if he should refuse to carry for any one who wished to employ him.'"

See, also, as bearing on the questions involved 6 Cyc. p. 365; 9 Am. & Eng. Enc. Law (2d Ed.) 237, 238; The Margaret v. Bliss, 94 U. S. 494, 496, 24 L. Ed. 146; Bell v. Pidgeon (D. C.) 5 Fed. 634, 638, affirmed (D. C.) 18 Fed. 192; Fish v. Clark, 49 N. Y. 122; The Dan (D. C.) 40 Fed. 691.

We are convinced that the rule in this country, at least in the federal courts, is that a lighter, hired exclusively to convey the goods of one person to a particular place for an agreed compensation, is not a common carrier. The motion made in this court to amend the libel is denied.

The decree is affirmed, with costs.