VOGEMAN et al. v. RAEBURN et al.

(Circuit Court of Appeals, Second Circuit.  July 1, 1910.)

No. 268.

ADMIRALTY (§ 66*)—LIBEL—AMENDMENT—CONFORMITY TO PROOF.

Where, on a libel for breach of a charter party, respondents admitted liability, and there was uncontradicted proof of substantial damages, libelants having pleaded a mistaken measure of damages, the court properly exercised its discretion in permitting an amendment of the libel to conform to the proof by inserting a demand for damages occasioned by the loss of profits in respect of the transportation of such cargo as would have been carried on the vessel.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 533; Dec. Dig. § 66.*]

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Heinrich Vogeman and others against John Raeburn and another for breach of a charter party.  The Commissioner awarded damages, fixed at $2,061.37, and defendants appeal.  Affirmed.

J. Parker Kirlin and Charles R. Hickox, for appellants.

Wallace, Butler & Brown (James K. Symmers, of counsel), for appellees.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge.  In October, 1900, the libelants chartered the respondents' steamship Miramar for a voyage from New York to Europe and return.  The ship was not tendered, as provided in the charter and, there being no question as to its breach, the case was sent to a commissioner to compute the amount of libelants' damages.  After carefully considering the testimony he found:

That but for the respondents' breach of charter, the
   libelants would have made in freight of the steam-
   ship Miramar the sum of...................... $19,857 05
To earn the same libelants must have paid for charter
   hire  ..........................................  11,736 90
For port charges...................................   3,770 53
For coal..........................................   2,288 25   17,795 68
                                                                ─────────
      Leaving as libelants' net freight...............         $2,061 37

This is a fair and conservative estimate and as favorable to the respondents, as is justified by the evidence.  It would appear from the record that respondents offered no proof and did nothing to assist the libelants although many of the essential facts were in their exclusive control.

For instance, they refused to produce the log book and much time was taken in proving facts regarding the speed of the Miramar, and other facts, which the log book should have shown at a glance.

It is fair to assume that if the amount of the award could have

─────────────────────
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

180 F.—7

been reduced by the facts recorded in the log book it would have been produced.

The testimony taken before the commissioner was not objected to by the respondents upon the ground that it tended to support a measure of damages not alleged in the libel. Both parties filed exceptions to the report and the libelants moved for an amendment conforming the pleadings to the proofs by inserting a demand for damages occasioned by the loss of profits in respect of the transportation of such cargo as would have been carried by the Miramar.

The motion was granted and this action of the court is assigned as error; it is, indeed, the principal point argued.

We have, then, an admitted liability of the respondents to respond in damages, uncontradicted proof showing substantial damages and an order of the district judge permitting an amendment conforming the libel to the proofs. This action of the judge was entirely within his discretion and was, we think, a wise exercise of that discretion. Unquestionably the libelants were damaged by the failure of the respondents to keep their agreement to deliver the ship. Without objection, on the ground that the libel was defective, the libelants proved their damages and it would seem almost a miscarriage of justice to deprive them of the amount thus lost because the pleader based his claim for damages upon a mistaken theory. The respondents were in no way misled, the course of the trial would have been the same if the libel, as amended, had been originally filed.

The allowance of the amendment was not an abuse of discretion. Davis v. Adams, 102 Fed. 520, 42 C. C. A. 493; The Wildenfels, 161 Fed. 864, 89 C. C. A. 58; Southern Express Co. v. Platten, 93 Fed. 936, 36 C. C. A. 46.

The decree is affirmed, with interest and costs.

NOTE.—The following is the opinion of Adams, District Judge, filed in the court below:

ADAMS, District Judge. This was an action brought in May, 1901, by Heinrich Vogemann et al. against William H. Raeburn et al. to recover the damages said to have resulted from a breach of a charter party, dated October 23, 1900, of the steamship Miramar, hired to the libellants, to commence service after arriving in New York, where she was due on the 27th of October, 1900. The libellants further allege:

"Fourth.—The libellants have performed all the terms and conditions of said agreement or charter party on their part to be performed, but the respondents have refused to permit the steamship Miramar to continue the voyage aforesaid toward New York or to begin the performance of the charter party aforesaid and said steamer has not been tendered to these libellants for use thereunder nor has said charter party been in any respect performed by the respondents, although performance thereof has been duly demanded.

Fifth.—By reason of the premises the libellants have been compelled to obtain and have obtained but at a necessarily increased cost, certain other tonnage for the transportation of the cargo by them engaged for the voyage intended to be made by the steamship Miramar aforesaid. But they have been unable to obtain sufficient vessels therefor although due diligence has at all times been used, and have lost the profits in respect of the transportation of such cargo, all to the loss and damage of these libellants in the sum of $2,000."

The answer admitted that the steamer was chartered as alleged and as follows:

"Fourth.—They deny the matters alleged in the fourth article of the libel, except that they admit that the said Steamship Miramar did not proceed to

the port of New York, and that the said steamship has not been tendered to H. Vogemann, for use under the charter party of October 23, 1900.

They further allege that said Steamship Miramar did not proceed to the port of New York, and was not tendered to H. Vogemann, such tender having been waived as hereinafter set forth.  *  *  *

Further answering, and as a separate defense herein, the respondents allege that the said charter of October 23, 1900, was signed 'by authority of owners and for myself as charterer. (Signed) H. Vogemann,' and contained the clause, 'charterers to have the option of cancelling if steamship not ready 31st October.' Said steamship Miramar when chartered, was at, or due at Tybee, near Savannah, Georgia, and was duly ordered to proceed to New York, to enter upon the charter to the libellants. On October 24th, said vessel duly sailed from Tybee for New York. On her voyage, and without fault on the part of the said steamship, or of these respondents, the said vessel became disabled and was towed into the port of Savannah, for repairs. Subsequent thereto, and before October 31, 1900, the said H. Vogemann was informed and knew that the said vessel could not reach New York, on or before October 31, 1900. Upon the receipt of such information, he entered into negotiations with the respondents, for a recharter of the said Steamship Miramar, upon other and different terms than those contained in the said charter party of October 23, 1900, by which the obligation of tendering said vessel at the port of New York, under the terms of said charter party of October 23, 1900, as respondents are advised, was waived by the charterer. The respondents, nevertheless, offered to cause the said steamship to proceed after her repairs were completed, to the port of New York, and enter upon a performance of said charter party of October 23, 1900, but the charterer neglected and refused to reply specifically to such offer, and wilfully conducted himself with the intention of misleading, and actually did mislead the respondents.

On information and belief the respondents allege that no damage has accrued to the libellants in the premises, and they further allege that if any damage has accrued, it was caused solely by the action and conduct of the said H. Vogemann, and not by any fault on the part of the respondents."

When the case was thus at issue it came on for trial February 7, 1902, and after the introduction of 3 exhibits for the libellants but no testimony and the respondents having failed to introduce any evidence, it was referred by interlocutory decree to a commissioner March 3, 1902, which, inter alia, provided:

"Ordered, adjudged and decreed that the libellants have and recover from the respondents the amount of the damages, if any, by them sustained, by reason of the matters and things alleged in the libel herein, with interest."

Nothing was done in the matter until March 6, 1906, when the libellants moved for a commission to Glasgow. The order was entered but no commission was issued, because the libellants did not take the further proper steps to obtain one. On the 21st of June, 1906, certain depositions were taken on behalf of the libellants in Philadelphia which were filed here July 6, 1906. The deponents were George M. Mason, John D. Spence and Robert C. McMurchy. Mason testified in brief that he was not the master of the Miramar at the time of the matters in controversy here. He gave testimony, however, with reference to voyages since January, 1905. Spence testified that he was not on the vessel in 1900 but joined her as chief engineer on the 10th of September, 1904. He produced logs covering from the 11th of June, 1905 and gave some testimony respecting different kinds of coal and their steaming qualities. Mr. McMurchy testified that he joined the Miramar in 1900 as chief officer and was on her when she put into Savannah on her way to New York to enter upon the charter in this case and went from there to Glasgow, Scotland. He also gave some testimony with respect to the vessel's speed. These depositions were duly returned.

Upon them and the testimony of several witnesses for the libellants, examined before the Commissioner, no evidence having been offered on behalf of the respondents, the Commissioner reported that the libellants were entitled to recover $2,844.72.

Upon the filing of the report, the libellants moved to amend their libel so that instead of alleging (Par. 4 of libel, supra) loss through having been compelled to obtain other tonnage and being unable to obtain sufficient vessels to replace the Miramar, they seek to allege as follows:

"Fifth: By reason of the premises the libellants have lost the profits in respect of the transportation of such cargo as would have been carried on the 'Miramar,' all to the loss and damage of these libellants in the sum of Thirty-five hundred dollars (3,500)."

The motion to amend has been strenuously opposed by the respondents, principally upon the ground of inconsistent sworn statements, which it is contended constitute a variance. It is, moreover, suggested by them that if the variance is not fatal, it proves the lack of knowledge on the part of the libellants as to whether or not they actually lost any opportunity to carry cargo by means of their inability to load the Miramar and creates an uncertainty as to the facts which should prevent the recovery of anything more than nominal damages.

The libellants certainly were rather lax in their method of proceeding and it inclines me to support the respondents' claim for the enforcement of strict rules with respect to an amendment but in looking through the case, they seem to have substantiated a claim for actual damages which it would seemingly be unjust to deprive them of on technical grounds. I therefore allow the amendment.

The exceptions do not present any features which require discussion. The Commissioner has apparently reached a just result and all of the exceptions will be overruled, excepting that the item of interest, $783.35, allowed by the Commissioner, will be stricken out. There could have been no recovery until the granting of the amendment and as that was only reached by this decision, it seems proper that interest should be excluded.