NICHOLAS J. RAHGO, Plaintiff, *v.* CITIES SERVICE OIL COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, February 3, 1942.

*Aaron Sofer*, for the plaintiff.

*Frueauff, Burns & Ruch* [*Arthur J. O'Leary* of counsel], for the defendant.

McNULTY, J.   The plaintiff in this action was formerly employed by the defendant as a chauffeur, operating an oil tank truck from the defendant's bulk storage plant, located in Mount Vernon, N. Y.   This truck was one of a number owned by the defendant and was utilized to supply retail distributors and large consumers in Westchester, Bronx and New York counties in the State of New York, with the products of the defendant.   At no time was this truck driven across State lines.   The oil and other petroleum

by-products which were sold by the defendant were delivered to the tanks at Mount Vernon, mainly by barges and in part by other trucks from New Jersey and Pennsylvania. Approximately ninety per cent of the petroleum utilized by this defendant is pumped and thereafter refined by it. A very small percentage of the products sold by the defendant was purchased from other producers or distributors within the State of New York.

The plaintiff sues for overtime pay as provided in subdivision (a) of section 7 of the Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 207), claiming to have worked a total of 232 hours of overtime. For this overtime, which the defendant conceded he worked, the plaintiff was paid only his regular hourly wage instead of wages at the rate of time and a half as provided for by this act. The defendant concedes that it is engaged in interstate commerce, but denies that the Fair Labor Standards Act, commonly referred to as the Wages and Hours Act, embraces this plaintiff.

The defendant's principal defense is that the plaintiff's occupation is within the scope of the Motor Carrier Act, 1935 (U. S. Code, tit. 49, § 301 *et seq.*), and that subdivision (b) of section 13 of the Fair Labor Standards Act specifically excepts this plaintiff from its provisions. Concededly if the plaintiff is one of the persons for whom the Interstate Commerce Commission may establish " qualifications and maximum hours of service " under the Motor Carrier Act he cannot succeed in this action. The mere fact that the Interstate Commerce Commission has not established regulations is immaterial if they have the power to make such regulations.

Utilizing the definitions for the classification of carriers in subdivision (a) of section 203 of the Motor Carrier Act, the defendant is a private carrier (cf. ¶¶ 14, 15, 17), and the plaintiff, as the chauffeur employed by this private carrier, is naturally a person essential to the operations of the defendant. The Interstate Commerce Commission has the power to establish his " qualifications and maximum hours of service " (cf. § 204, subd. [a], ¶ [3]), if these trucking operations of the defendant are within the purview of the Motor Carrier Act. However, it should be noted that the motor carriers covered by this act are set forth in subdivision (a) of section 202, which states as follows: " The provisions of this chapter apply to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce * * *." It should be borne in mind that this act applies to carriers and the transportation of goods or passengers, including the persons essential to these operations, but is not concerned with the type of goods carried. It makes no provision for carriers engaged in intrastate

commerce. The definition of interstate commerce for the purposes of this act is set forth in paragraph (10) of subdivision (a) of section 203 as follows: " The term ' interstate commerce ' means commerce between any place in a State and any place in another State or between places in the same State through another State, whether such commerce moves wholly by motor vehicle or partly by motor vehicle and partly by rail, express, or water."

This plaintiff as an employee of a private carrier, under the conceded facts, does not move through any other State nor across any State line unless it can be said that the haulage of the petroleum and its by-products from New Jersey and Pennsylvania by truck and by barge constitutes part of the commerce in which this plaintiff is engaged. It seems clear that the bulk plant operated by the defendant in Mount Vernon is a storage plant and is exactly similar to a warehouse. The goods consigned and delivered there are to a definite and known consignee, the defendant itself; but the consignees to whom plaintiff as an operator of a truck delivers are a large and varied group whose specific identifications are unknown until orders are placed by them with the defendant's agents. The needs and wishes of these consignees are not considered in the transportation of the petroleum products to Mount Vernon but the defendant is interested solely in keeping an adequate supply of fuels on hand to take care of the wants of all potential consumers or retailers in that area. Quite conceivably the individual consumers and retailers might take their patronage elsewhere and be replaced by others with whom the defendant had theretofore not done business. That would in nowise affect the deliveries to Mount Vernon except as the varying demands might indicate the need for more or less supplies on hand.

In other words, the activities of the plaintiff in operating this tank truck cannot be construed as part of a continuous haul operation, transporting goods from without the State partially by barge or truck and partially by the truck operated by the plaintiff himself to a definite and known class of consignees. The fact is that the needs for his services vary with the rise and fall of local demands, not with the interstate shipments from outside New York. Plaintiff's functions differ not at all from those of a truckman employed by a large department store engaged to transport its goods from its store to its customers as the need evinced by its sales requires or to distribute its goods to its customers directly from the warehouse after they have been sold. Clearly, even though these goods were produced in other States this operation could not be said to be part of the interstate commerce that deposited these goods in the store or warehouse of the store. Hence, it seems clear

that the plaintiff's duties do not fall within the meaning of the term " interstate commerce " as used in the Motor Carrier Act.

The defendant then argues that if the plaintiff as an employee of a private carrier is not engaged in " interstate commerce " within the meaning of the Motor Carrier Act, plaintiff cannot succeed because the Fair Labor Standards Act applies only where interstate commerce is involved. This contention, however, overlooks the fact that the Motor Carrier Act applies to carriers and to those necessary to the operation thereof, and to transportation only, and the Fair Labor Standards Act applies not only to transportation or commerce but also to the production of goods for commerce. Perhaps the most significant definition for the purpose of this case used in the Fair Labor Standards Act is the definition of the word " produced " as defined in subdivision (j) of section 3 of the act. (U. S. Code, tit. 29, § 203.) This definition reads, " ' Produced ' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." " Goods " are defined in subdivision (i) of the same section as follows: " ' Goods ' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

It is, therefore, very clear that not only does the Fair Labor Standards Act apply to the production as well as the transportation of goods but also that the concept of interstate commerce under that act is much broader than the concept as utilized under the Motor Carrier Act. There can be no doubt that this plaintiff as well as this defendant is engaged in the production of goods within the meaning of the Fair Labor Standards Act. The mere fact that the plaintiff individually is not engaged in commerce between the States does not exclude him from the provisions of this act since he is clearly engaged in the production of goods for commerce as defined above.

The Interstate Commerce Commission has held that it has no power to regulate the operation of motor vehicles from a wholesale warehouse or storage terminal to which these goods have been delivered from out-of-State sources of supply where the delivery is limited to customers within the same State. (*Moses, Contract*

*Carrier Application*, 4 Motor Carrier Cases, 425; *Surles, Contract Carrier Application*, Id. 488; *R. & R. Express Co., Contract Carrier Application*, 7 id. 115; *Kelly, Contract Carrier Application*, Id. 315. See, also, Interstate Commerce Commission Ruling, No. 93, Nov. 1940.) Under the Fair Labor Standards Act the Administrator has ruled that the operators of these carriers are within the provisions of this act. This ruling is contained in paragraph 7 of the Interpretative Bulletin No. 9, issued by the Wages and Hours Division of the United States Department of Labor. And as the Supreme Court has stated in *United States* v. *American Trucking Associations, Inc.* (310 U. S. 534 [1940]), " such interpretations are entitled to great weight."

The Appellate Division of the Supreme Court, First Department, in deciding in favor of the defendant in the case of *Killingbeck* v. *Garment Center Capitol, Inc.* (259 App. Div. 691), stated: " Concededly the statute would include those employees of a manufacturer who produced the goods. It may include a watchman or a carpenter employed by the manufacturer, even though such employees are not directly engaged in production of the goods, because they may be said to be employed in an ' occupation necessary to the production thereof.' " In this case the Appellate Division decided for the defendant because the plaintiffs were not employed by the manufacturers but were employed by the landlord of the premises housing these manufacturers. The United States Court of Appeals of the Second Circuit, in the case of *Fleming* v. *Arsenal Building Corporation* (decided Dec. 30, 1941, N. Y. L. J. Feb. 2, 1942, p. 491) went even further and decided that the employees of a landlord housing manufacturers engaged in interstate commerce were entitled to the benefits of the Fair Labor Standards Act. For other related cases in this State see the opinion of Mr. Justice Rosenman of the Supreme Court of the State of New York, in the case of *Reck* v. *Zarnocay* (N. Y. L. J. June 4, 1941, p. 2509), and the opinion of Mr. Justice Livingston of the City Court of the City of New York, Kings County, in *Doyle* v. *Johnson Bros., Inc.* (176 Misc. 656).

It follows, therefore, that the plaintiff is entitled to a judgment for wages for 232 hours of overtime work at half his hourly rate of pay, since the defendant has already paid him his regular hourly wage for this overtime, in the sum of $103.24. In addition, in accordance with subdivision (b) of section 16 of the Fair Labor Standards Act (U. S. Code, tit. 29, § 216), he is entitled to an equal sum as liquidated damages and his attorney under the same provision is awarded $150 as reasonable attorney's fees in view of the amount of work done on this action, and the probability of appeal from this decision. Judgment accordingly, twenty days' stay.