WILLIAM D. NEUBERG, Doing Business Under the Name of WILLIAM D. NEUBERG Co., Plaintiff, *v.* AVERY F. PAYNE Co., INC., Defendant.

AVERY F. PAYNE Co., INC., Plaintiff, *v.* MUNDEX TRADING CORPORATION, Defendant.

Supreme Court, Trial Term, New York County, April 25, 1944.

*Lester Stone* for plaintiff in first action.

*Robert J. Blum* for defendant in first action and plaintiff in second action.

*Julius Roth* for defendant in second action.

PECORA, J. Plaintiff William D. Neuberg Co. (herein referred to as " Neuberg ") brought this action to recover damages for an alleged breach of contract against defendant Avery F. Payne Co., Inc. (herein referred to as " Payne "). On January 2, 1942, Payne had agreed to purchase from Neuberg 85,000 pounds of a chemical known as lithopone at a price of 10½ cents per pound, to be delivered in February of that year. Payne had on the same day contracted to sell to the Mundex Trading Corporation (herein referred to as " Mundex ") 110,250 pounds of lithopone at 11⅛ cents per pound for delivery about February 15, 1942. After the commencement of the Neuberg action, Payne in turn sued Mundex for an alleged breach of contract. Both actions were consolidated. The determination of the issues raised upon the trial of the consolidated actions depends upon the construction and effect of a price ceiling order for lithopone issued by the Office of Price Administration on January 28, 1942, and of an amendment to the order which became effective on February 27, 1942. The price ceiling order (Revised Price Schedule No. 80, 7 Fed. Reg. 1355) provided: " On and after February 2, 1942, regardless of the terms of any contract of sale or purchase, or other commitment, no person shall sell, offer to sell, deliver or transfer lithopone, and no person shall

buy, offer to buy or accept delivery of lithopone, at prices higher than the maximum prices set forth in Appendix A, incorporated herein as 1335.659.'' Section 1335.659 referred to sets the maximum price for lithopone of the type involved herein at $4\frac{1}{4}$ cents per pound in carload lots and $4\frac{1}{2}$ cents per pound in less than carload lots, which prices are considerably lower than those fixed in the contracts at bar.

On February 27, 1942, the Office of Price Administration promulgated amendment No. 1 to the price ceiling schedule above quoted, which, so far as is material here, reads as follows (7 Fed. Reg. 1643) : '' (e) Pre-existing contracts. On and after February 2, 1942, any dealer or exporter who was not engaged in manufacturing lithopone or engaged in any other manufacturing activity, prior to such date, and who, prior to February 2, 1942, had lithopone on hand or in the hands of a carrier or warehouse, other than a carrier or warehouse owned and controlled by the person from whom such lithopone was purchased in order to meet a contract of sale made prior to February 2, 1942, may deliver such lithopone in accordance with the terms of such contract; and any dealer or exporter to whom such delivery of lithopone is made and who had entered into a contract for the sale thereof prior to February 2, 1942, may deliver such lithopone in accordance with the terms of such contract; *Provided* * * * ''.

The novel problem as to the effect of this amendment upon contracts existing at the time the original price ceiling order went into force, is here presented.

The Court of Appeals in *Matter of Kramer & Utchitelle, Inc.* (288 N. Y. 467) considered the effect of maximum price regulations issued by the Office of Price Administration upon existing contracts. It was held there that by the act of the Government there had been '' complete frustration of performance * * * as a matter of law ''. Plaintiff Neuberg contends, however, that whatever effect the price ceiling regulation of February 2, 1942, had upon the contracts, such effect was dissipated by the amendment of February 27, 1942.

In this court's opinion, the amendment was permissive in character and was not mandatory in the sense that it either compelled or required performance of pre-existing contracts.

The obvious purpose of the amendment was to enable certain buyers and sellers, who were desirous of so doing, to complete contracts requiring payments of prices above ceilings where cancellation of the contracts would create hardships. Performance would then not violate the law. Certainly the amendment

cannot be interpreted as a means for shifting a loss from the seller to the buyer by compelling performance of the contract on the latter's part. The establishment of a price ceiling was not an event within the contemplation of the parties at the time of the making of the contract. The court may not, therefore, read into the contract an implied agreement to assume the risk.

In the conclusion reached herein the court is fortified by an opinion given by the Price Administrator on April 7, 1943, in which that official stated that " The amendment did not require the parties to carry out contracts subject to its terms but exempted such contracts from price control ". In *Matter of Frankle (Petzold, Ltd. Fur Dyeing Corp.)* (180 Misc. 88, 90), the court in discussing the effect to be given to an opinion by the Administrator of the Office of Price Administration said, " While this opinion of the Chief Price Attorney is not arbitrarily controlling, it is entitled to respectful and careful attention *(United States v. American Trucking Assn.,* 310 U. S. 534; *Rahgo v. Cities Service Oil Co.,* 177 Misc. 1059) ".

Consequently the plaintiff Neuberg may not enforce the contract against Payne, and the latter may not in turn compel performance by Mundex, since these buyers did not consent to revive their contracts and receive the lithopone at the contract prices. Judgment is therefore granted dismissing the complaints in both cases. Settle judgment accordingly.