THE ABBAYE, Appellant, *v.* THE UNITED STATES MOTOR CAB COMPANY, Respondent.

(Supreme Court, Appellate Term, April, 1911.)

Abutting owners — Rights and liabilities in general — Extent of abutting owners' rights in streets.

Contracts: Validity of contracts — Contracts involving violation of positive statute — Violation of ordinance: Performance of contracts; Sufficiency of performance in general — What constitutes substantial performance; Excuses for nonperformance.

A provision of a contract, granting to defendant at a monthly rental for a definite term a permit for a private hack stand in front of plaintiff's restaurant in the city of New York, that defendant would maintain a taxicab starter from six P. M. to six A. M., is a mere detail of the business; and where neither from the contract nor from the surrounding circumstances any inference can be drawn that the plaintiff's "all night" license was regarded by the parties as the basis of the contract, the expiration of the license and the refusal of the city to renew it will not terminate the contract.

The contract between plaintiff and defendant was not illegal because it attempted to give a lease of a public street.

APPEAL by the plaintiff from a judgment in favor of defendant, entered in the Municipal Court of the city of New York, borough of Manhattan, first district, after a trial before the court without a jury.

Leonard Bronner (S. Marshall Kronheimer, of counsel), for appellant.

Arthur W. Opp, for respondent.

BIJUR, J.   No questions other than of law are involved in this case.  Plaintiff, as lessee of part of a building, conducted a restaurant.  It agreed with defendant, in substance, to grant it a permit (which is necessary under the Code of Ordinances of the city of New York), for the establishment of a private hack stand in front of the premises.  Defendant agreed to pay a monthly rental for this permit for a definite period.  Three or four months after the initiation of the arrangement, the " all night " restaurant license enjoyed by the plaintiff was, as the record states, revoked (although to be accurate, it no doubt expired and a renewal was refused) ; and, thereafter, plaintiff's restaurant was compelled to close at one A. M.   Thereupon defendant declined to pay any longer the monthly sum, contending, in substance, that the enjoyment of the " all night " license by the plaintiff, with the consequent profitable business derived during the early morning hours by the defendant, having been terminated, the contract between the parties came to an end; or, to put it in the language of some of the leading cases on the subject, defendant contends that there was an implied condition in the contract between the plaintiff and defendant that, if the " all night " license should be revoked, defendant might treat the contract as thereby abrogated.

I cannot agree with the learned court below that the agreement in, or the circumstances of, this case bring it within the rule.  The happening of an event not brought about by the action of either party, and not provided for in the agreement itself, will not be interpreted as terminating the agreement merely because the further enforcement of the contract is thereby made more burdensome to one or the other party.  Baker v. Johnson, 42 N. Y. 126.

Nor does this case come within the category of those where subsequent legislation has made illegal the carrying out of a contract which had theretofore been legal; or, as some authorities put it, had made it impossible of execution.  See Adler v. Miles, 126 N. Y. Supp. 135.

But the distinguishing feature in the case at bar is that, neither from the language of the agreement nor from the surrounding circumstances as developed at the trial, can it be

inferred that the " all night " license was regarded by the parties as the basis of the contract, nor that its revocation was a totally unlooked-for circumstance.

While it may be that the revocation of the license has rendered the contract far less profitable to defendant than it had been theretofore, it still subsists. Plaintiff continues to carry out its part of the agreement; and there is ample substantial consideration continuously moving to the defendant for the payments which it had agreed to make.

As to the agreement itself, the only indication that " all night " business was even contemplated is a provision that the defendant would maintain a taxicab starter from six P. M. to six A. M.— a provision as to a mere detail of the business, intended to provide certain accommodations in view of the manner in which the business was expected to be conducted, but far from a persuasive indication that the "all night " business was regarded as a *sine qua non,* or as the basis of the agreement. In this respect, the case at bar differs from the leading case of Lorillard v. Clyde, 142 N. Y. 457, and subsequent cases in which the decision in the Lorillard case has been cited — often indeed, as affirming a rule much broader than its language warrants.

My view, moreover, is confirmed by a reading of the careful opinion of Vaughn Williams, J., in the well-known and recent case of Krell v. Henry (1903), 2 K. B. 740, where the entire rule is thoroughly discussed and expounded. In that case the lease of a window for the purpose of viewing the coronation procession was held to be non-enforceable by reason of the postponement of the coronation.

I see no merit in another point raised by the defendant, namely, that the agreement between plaintiff and itself was illegal because it attempted to give a lease of a public street. My interpretation of the terms of the agreement in that respect, as hereinabove set forth, is a sufficient answer to that contention.

Nor do I find to be well taken the objection that the lease under which plaintiff occupied the restaurant forbade, as an incumbrance upon the approaches to the premises, any such arrangement as the one involved in this controversy.

The language of the lease did not expressly forbid such arrangement, defendant actually enjoyed the privilege accorded, and there is not the slightest indication that the landlord made any objection.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.

SEABURY and PAGE, JJ., concur.

Judgment reversed.