In the Matter of KRAMER & UCHITELLE, INC., Respondent. EDDINGTON FABRICS CORPORATION, Appellant.

In the Matter of KRAMER & UCHITELLE, INC., Respondent. M. LOWENSTEIN & SONS, INC., Appellant.

In the Matter of KRAMER & UCHITELLE, INC., Respondent. CLASSIC MILLS, INC., Appellant.

Submitted February 24, 1942; decided July 29, 1942.

*Irving D. Lipkowitz* and *William Hughes Lewis* for appellants. Where an admittedly valid agreement is made providing for arbitration of any controversy thereafter arising under or in relation to the agreement and a genuine dispute arises over the non-performance of the agreement the court must compel and may not stay arbitration. (*Matter of Berkovitz* v. *Arbib & Houlberg*, 230 N. Y. 261; *D. & H. Canal Co.* v. *Pennsylvania Coal Co.*, 50 N. Y. 250; *Fudickar* v. *Guardian Mut. Life Ins. Co.*, 62 N. Y. 392; *Berizzi Co.* v. *Krausz*, 239 N. Y. 315; *Matter of Wenger & Co.* v. *Propper Silk Hosiery Mills, Inc.*, 239 N. Y. 199; *Matter of Hines [Ziegfeld]*, 222 App. Div. 543.) Under the agreements in the instant cases, admittedly valid when made, the question of the alleged discharge of the agreements by supervening events is a matter for the arbitrators and not the court. (*Matter of Kahn [National City Bank]*, 284 N. Y. 515; *Matter of Bullard* v. *Grace Co.*, 240 N. Y. 388; *Matter of Pierce & Brown Buick Co.*, 258 App. Div. 679; 283 N. Y. 669; *Matter of Cheney Bros.* v. *Joroco Dresses, Inc.*, 245 N. Y. 375; *Matter of Exeter Mfg. Co.* v. *Marrus*, 254 App. Div. 496; *Matter of Wenger* v. *Propper Silk Hosiery Mills, Inc.*, 239 N. Y. 199.) The courts below having concluded that the petitioner met the burden imposed by section 1458 of the Civil Practice Act, they were bound to order an immediate trial of the issues and were without power to dispense with such a trial. (*Matter of Manufacturers Chemical Co.* v. *Caswell, Strauss & Co.*, 259 App. Div. 321; *Matter of Universal Film Exchanges, Inc.*, v. *King*, 144 Misc. Rep. 708;

*103 Park Ave. Co.* v. *Exchange Buffet Corp.*, 203 App. Div. 739; *Oppenheim* v. *Thanasoulis*, 123 App. Div. 494.)

*Abraham Mann* and *Joseph Yaspan* for respondent. The contracts were nullified by the ruling of the Price Administrator and all of their provisions, including the arbitration clauses, are at an end. (*Varagnolo* v. *Partola Mfg. Co.*, 209 App. Div. 347; 239 N. Y. 621; *Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290; *Nitro Powder Co.* v. *Agency of C. C. & F. Co.*, 233 N. Y. 294; *Adler* v. *Miles*, 69 Misc. Rep. 601; *Mulji* v. *Cheong Yue Steamship Co.* [1926] App. Cas. 497; *Matter of Metro Plan, Inc.*, v. *Miscione*, 257 App. Div. 652.) Whether a valid contract to arbitrate is in existence or not is a question for the court, and not arbitrators, to decide. (*Matter of Berkovitz* v. *Arbib & Houlberg*, 230 N. Y. 261; *Matter of Hesslein & Co.* v. *Greenfield*, 281 N. Y. 26; *Finsilver, Still & Moss* v. *Goldberg, M. & Co.*, 253 N. Y. 382; *Matter of Metro Plan, Inc.*, v. *Miscione*, 257 App. Div. 652; *Matter of Universal Film Exchanges, Inc.*, v. *King*, 144 Misc. Rep. 708; *Matter of A. E. Fire Ins. Co.* v. *N. J. Ins. Co.*, 240 N. Y. 398; *Matter of Zimmerman* v. *Cohen*, 236 N. Y. 15.) It was a proper exercise of discretion on the part of the judges at Special Term to dispense with unnecessary trials of nonexistent issues. (*Finsilver, Still & Moss* v. *Goldberg, M. & Co.*, 253 N. Y. 382; *Matter of Peterson*, 253 U. S. 300; *Davis* v. *Zimmerman*, 91 Hun, 489; *Riglander* v. *Star Co.*, 98 App. Div. 101; 181 N. Y. 531; *Mahnk* v. *Blanchard*, 233 App. Div. 555; *Matter of Bernstein* [*Abrams*], 176 Misc. Rep. 563.)

RIPPEY, J. Although the foregoing were separately instituted and separately prosecuted proceedings under article 84 of the Civil Practice Act, argument thereof was consolidated in the court below and in this court, the same questions are involved in all of them and they will be treated as one consolidated proceeding in our opinion here.

On June 18 and 19, 1941, the petitioner-respondent, Kramer & Uchitelle, Inc., entered into four separate written contracts severally with appellants, Eddington Fabrics Corporation, M. Lowenstein & Sons, Inc., and Classic Mills, Inc., affiliated corporations, generally similar in form as to all features affecting the decision here, by which appellants agreed to buy and the petitioner agreed

to sell 365,000 yards of plaincloths, woven cuts as far as practicable, of specified count, width, weight and quality at 8.9375 cents per yard for 40,000 yards, 9 cents per yard for 150,000 yards and at 9.8 cents per yard for the balance, net ten days, F.O.B. mill, delivery to be made on order by installments during the months of August and September, 1941, subject to the provisions of Standard Cotton Textile Sale Note (with Specification G), which was made a part of the agreement. The "plaincloths" referred to in the contracts were "Cotton Gray Goods." Each contract contained a clause that "any controversy arising under or in relation to this contract shall be settled by arbitration. If the parties are unable to agree respecting time, place, method or rules of the arbitration, then such arbitration shall be held in the city of New York in accordance with the laws of the State of New York and the rules then obtaining of the General Arbitration Council of the Textile Industry."

On April 11, 1941, the President of the United States, in accordance with authority vested in him by the Congress as affecting the emergency, issued Executive Order No. 8734, establishing the Office of Price Administration and Civilian Supply (OPACS) in the Executive Office of the President and defined its duties and functions and, pursuant thereto, appointed Mr. Leon Henderson as Administrator. On June 27, 1941, Administrator Henderson, by due authority, issued Price Schedule No. 11, which pertained to "Cotton Gray Goods," effective June 28, 1941, which read in part as follows: "1316.2 Maximum Prices Established for Cotton Grey Goods. (a) On and after June 30, 1941, regardless of any commitment theretofore entered into, no person shall sell or deliver, or offer to sell or deliver, any Cotton Grey Goods, and no person shall buy or accept delivery of or offer to buy or accept delivery of, any Cotton Grey Goods at a price exceeding the maximum prices set forth in 1316.7." The price established in 1316.7 was 8.037 cents per yard. No party here challenges the validity of the order and all parties construe it as applicable to existing contracts.

When the delivery dates arrived, the seller refused the demands of the purchasers to make deliveries at the "maximum price set forth" in the order of the Price Administrator on the grounds that

performance of the contract had been forbidden by law and non-performance had been excused. The buyers served demands on the seller that it submit the matter to arbitration. Thereupon the seller moved in each case for a stay of arbitration pursuant to section 1458 of the Civil Practice Act upon the grounds that by the order of the Price Administrator performance of the contracts had been frustrated and that such frustration terminated the whole contract including the incidental provisions for arbitration. The notice of motion in each case contained a statement that the court would be asked to order an immediate trial of the issues. In the first motion returnable an order was granted ordering a trial but upon a reargument requested by purchaser, the court held that no trial was necessary and stayed arbitration permanently upon the motion papers. Petitioner's motions in the subsequent cases were granted upon the authority of the first. A separate order was entered in each case at Special Term and in the Appellate Division. Upon appeal, the Appellate Division unanimously affirmed in each case, without opinion, but granted leave to appeal to this court.

Arbitration clauses in contracts such as those under consideration are directed solely to the remedy—not to the validity or existence of the contract itself. Thus proceedings to enforce arbitration under article 84 of the Civil Practice Act presuppose the existence of a valid and enforceable contract at the time the remedy is sought. (*Matter of Berkovitz* v. *Arbib & Houlberg, Inc.*, 230 N. Y. 261, 271; *Mulji* v. *Cheong Yue Steamship Co., Ltd.* [1926] A. C. 497.) Seasonable challenge may be made to the court to the existence of such a contract by one who stays out of the arbitration and, if no issue of fact is presented on such challenge, the issue is properly determinable by the court as matter of law. (*Matter of Finsilver, Still & Moss, Inc.*, v. *Goldberg Maas & Co.*, 253 N. Y. 382.) There is no issue of fact raised by the record. The affidavits are in agreement as to all material facts and no reason for a trial was shown to the court. If a trial had been ordered, there would have been no issue to decide. Both parties to each proceeding admit the making of the contract, that the contract price was higher than that fixed as the maximum by the Price Administrator, that the ceiling was fixed before delivery was required by the contract and that the contract was not performed.

As of the precise time when the remedy was invoked, it was to to be determined whether public policy prohibited enforcement of the contracts according to their terms. The price at which the goods were to be sold as of the time of delivery was as much of the essence of the contract as any of its other provisions and controlling public policy barred delivery at that price. By act of government there was complete frustration of performance excusing the seller from performance as matter of law. (*Mulji* v. *Cheong Yue Steamship Co.*, supra; *Varagnolo* v. *Partola Mfg. Co.*, 239 N. Y. 621; *Nitro Powder Co.* v. *Agency of Canadian Car & Foundry Co.*, 233 N. Y. 294; *Mawhinney* v. *Millbrook Woolen Mills, Inc.*, 231 N. Y. 290; 6 Williston on The Law of Contracts, §§ 1759, 1938.)

Arbitration was the method agreed to between the parties to determine controversies in connection with the obligations of the seller and buyers to deliver and pay for cotton gray goods at a stipulated price. The question was not whether the seller could be compelled to deliver the goods at the price fixed as the maximum by the Price Administrator. It was whether delivery could be compelled according to the terms of the contracts of sale and the Price Administrator put an end to that question and to the contract itself before time for delivery arrived or any dispute as to delivery arose. Thus there was no " controversy arising under or in relation to " the contracts. The arbitration clause was only an incidental part of an indivisible contract of purchase and sale and when the contract was at an end the arbitration provision no longer existed or had any force whatsoever (*Mulji* v. *Cheong Yue Steamship Co.*, supra; Russell on Arbitration and Award, p. 78) except as to rights and wrongs which had already come into existence as to which the contract still remained in effect.

The orders should be affirmed, with costs.

LEHMAN, Ch. J. (dissenting). Classic Mills, Inc., has made a contract with M. Lowenstein & Sons, Inc., for the delivery of " cotton grey goods " at a stipulated price. The Price Administrator of the Office of Price Administration and Civilian Supply has issued an order that, " regardless of any commitment theretofore entered into, no person shall sell or deliver, or offer to sell or

deliver, any Cotton Grey Goods, and no person shall buy or accept delivery of, or offer to buy or accept delivery· of, any Cotton Grey Goods at a price exceeding the maximum prices set forth in 1316.7." The maximum prices " set forth " are lower than the stipulated price. The buyer has demanded delivery at the " maximum price set forth." The seller has refused performance of the contract on the ground that performance of the contract has been forbidden by law and in consequence non-performance has been excused.

The contract of sale provides: " Any controversy arising under or in relation to this contract shall be settled by arbitration. If the parties are unable to agree respecting time, place, method or rules of the arbitration, then such arbitration shall be held in the City of New York in accordance with the laws of the State of New York and the rules then obtaining of the General Arbitration Council of the Textile Industry." A controversy exists. That cannot be disputed. It is a controversy " arising under or in relation to " the contract. That, too, is clear. Accordingly the buyer has demanded arbitration and when the seller denied that it was bound to arbitrate the controversy, the buyer served a demand upon the seller that it submit the controversy to arbitration. The seller thereupon moved, in accordance with the provisions of section 1458 of the Civil Practice Act, for a stay of arbitration. The seller admits the making of the contract of sale and that it contained the provision for arbitration. It claims, however, that performance of the contract has been frustrated and that such frustration has terminated the whole contract including the incidental provision for arbitration. The courts below have sustained that contention, and the arbitration proceedings have been permanently "stayed and enjoined."

I shall state as briefly as I can the reasons why I cannot concur in that conclusion. I do not pause to consider the legal effect of the order of the Price Administrator. That is the question which the buyer demands should be submitted to arbitration. We do not reach that question if the parties have agreed that it should be determined by arbitration, not by the court. The court, upon the motion to stay arbitration, has power to decide only an issue " as to the making of the contract * * * or the failure to comply therewith." (Civ. Pr. Act. § 1450.) As I have said, there is no

issue as to the making of the contract for arbitration. The only issue in this case is as to the failure to comply therewith. There is failure to comply with the contract of arbitration, which is, I concede, only an incidental part of the contract to sell and pay for goods, if the controversy as to whether the principal contract has been terminated by impossibility of performance in exact accordance with its terms falls within the scope of the agreement to arbitrate. The primary question to be determined upon this appeal concerns the scope of the agreement to arbitrate.

Doubtless, since the contract for arbitration is only an incidental part of an indivisible contract of purchase and sale, it can apply only to a controversy in regard to the obligation of the seller to deliver the goods or the obligation of the buyer to accept and pay for them. If, then, it appeared without dispute that these obligations had been terminated either by act of the parties or from some other cause, it would be plain that no controversy exists which the parties agreed to submit to arbitration. Here there is no dispute concerning the facts, but there is dispute about the effect of those facts upon the obligations assumed by the buyer and the seller. The seller asserts that as matter of law neither party can or may lawfully perform the obligation it assumed at a time when performance was lawful. The buyer asserts that the obligation of the seller to *deliver* the goods may be performed without violation of the order of the Price Administrator, and that the effect of the order is only to relieve the buyer of obligation to pay for the goods the part of the stipulated price in excess of the price fixed by the order. I assume, *arguendo*, but only *arguendo* and without further consideration or attempt to decide, that a court of law applying legal rules and principles would be constrained to sustain the contention of the seller. I cannot assume that arbitrators might not sustain the contention of the buyer, and to me it seems clear that by agreement of the parties any controversy concerning the existence, scope or effect of the obligations assumed under the contract is a controversy " arising under " the contract and also " in relation " to the contract, and that such a controversy must be " settled by arbitration " in accordance with the contract made by the parties.

In the affidavit of the seller upon the motion for a stay of arbitration the demand of the buyer for arbitration is characterized as " a very clever move because arbitrators in the textile industry — invariably laymen who are untrained in the distinctions of the law — might be deluded into thinking that Mr. Henderson's price ruling was intended to benefit the buyer and thus make some kind of an award to it." In that statement the seller, it seems to me, supplies an incontrovertible reason why the arbitration should proceed. The parties have agreed to abide by the judgment of business men in *all* disputes concerning the interpretation of their contract or the scope of the obligations they have assumed, and disputes concerning the effect of subsequent words, acts or events upon these obligations are not excluded. It has been said that " *   *   * the conditions that rendered performance impossible do not terminate the contract *ab initio*, and vitiate what has been done and what remains to be done that is capable of execution. The conditions may be of such an extent as to amount to a substantial abrogation of the entire contract, or they may relate to an insignificant part of the contract, but they excuse performance only to the extent to which performance is impossible, and leave what has been done valid permitting a recovery therefor, and may not excuse performance of the remaining work. No general rule can be laid down which will apply to all cases, but each case must be decided upon its own facts, and that this course can be taken and justice done according to the facts in each case unhampered by written rules is due to the great flexibility of the common law which is its chief merit." (*Kinser Construction Co.* v. *State*, 125 N. Y. Supp. 46, at p. 55; affd., 145 App. Div. 41; affd., 204 N. Y. 381; quoted with approval, 6 Williston on The Law of Contracts [1938], § 1956.) Professor Williston there states the applicable rule: " Since the qualification of the literal terms of the promise is imposed by the law, on principles of justice, not because of the expressed intention of the parties, the extent of the qualification depends merely on what is just." The parties have agreed to submit question of what is just to business men " untrained in the distinctions of the law." The courts should not assume to decide according to legal principles a controversy which the parties have

agreed should be decided otherwise. The order should be reversed, etc.

LOUGHRAN, FINCH, LEWIS and CONWAY, JJ., concur with RIPPEY, J.; LEHMAN, Ch. J., dissents in opinion in which DESMOND, J., concurs.

Orders affirmed.