**LONG ISLAND STRUCTURAL STEEL CO., Inc., v. SCHIAVONE-BONOMO CORPORATION.**

District Court, S. D. New York.

Nov. 3, 1943.

Karl Propper, of New York City, for plaintiff.

Louis Bevier, of New York City, for defendant.

CONGER, District Judge.

Both sides agree that there is no issue of fact involved and that summary judgment is in order.

The only difference is that plaintiff asks for judgment in the sum of $6,232.11, while the defendant contends it only owes $1,173.31, for which sum it has offered judgment.

On December 17, 1942, plaintiff agreed to sell and deliver to defendant a certain quantity of unprepared iron and steel scrap, and defendant agreed to accept and pay therefor the sum of $12.83 per gross ton. All of the steel has been delivered and paid for in part. The dispute is concerning the balance due.

There is a second cause of action which deals with the sale of a certain quantity of prepared steel scrap. With this we are not concerned. The amounts asked for in each cause of action have been lumped together. A determination of the issue raised on this motion will determine the entire action.

This controversy involves an interpretation of an order of the Office of Price Administration known as "Revised Price Schedule No. 4 Iron and Steel Scrap."

There is no question raised as to the power and authority of the OPA to make, issue and enforce such a schedule.

The sole question involved here is whether 5058.80 gross ton of unprepared iron and steel scrap delivered by plaintiff to defendant may be charged by the plaintiff and paid for by the defendant at the contract price of $12.83 per gross ton or whether the price to be paid shall be $11.83 per gross ton which was the maximum price fixed by the OPA by an amended price schedule, January 22, 1943. The contract price of $12.83 (December 17, 1942) was in accordance with the price schedule for this type of material as fixed by the OPA on that date.

On January 16, 1943 (effective January 22, 1943), the OPA amended this schedule so that the maximum price that might be charged was $11.83 per gross ton. After this and on January 22, 1943 and until April 15, 1943 plaintiff delivered to defendant under the contract the greater por-

tion of the scrap iron and steel contracted for. Plaintiff now demands payment. He wants to be paid at the contract price. Defendant wants to pay him the maximum price allowed by the OPA at the time of delivery. The regulation involved reads as follows: "Sec. 1304.1 Maximum prices on sales of iron and steel scrap other than railroad scrap. On and after April 3, 1941, regardless of the terms of any contract of sale or purchase or other commitment theretofore entered into, no person shall sell, offer to sell, deliver, or transfer iron and steel scrap other than railroad scrap, to the consumer of such scrap or to his broker, at prices higher than the prices set forth in Appendices A. C. D. and E, incorporated herein as Sections 1304.13, 1304.15, 1304.16 and 1304.17, and no consumer or broker shall buy, offer to buy, or accept delivery of, iron and steel scrap other than railroad scrap at prices higher than the prices set forth in Appendices A. C. D. and E. (Sections 1304.13, 1304.15, 1304.16 and 1304.17) except as provided in Sections 1304.6 and 1304.9 hereof."

This section was in effect when the contract was entered into and was not later amended except the appendix which fixed the maximum price per ton at $12.83 and was amended on January 22, 1943 to lower said maximum price to $11.43.

Plaintiff argues that the amendment to the appendices did not affect this contract because the contract specified a price that was official and the prevailing price when the contract was made; that section 1304.1 with the amended appendix did not propose to affect contracts made in conformity with existing price regulations; that it expressly affects only those contracts made before there existed an Office of Price Administration price control, that is before April 3, 1941, the date upon which the price control expressly became effective.

I cannot agree with the plaintiff in this contention. True, the section expressly brings within its provisions all contracts made prior to April 3, 1941, but I cannot conceive that it intends to exempt therefrom contracts made thereafter. In other words, I am convinced that the scale of prices affects any contract made thereafter, even though the scale of prices may be changed from time to time. When one considers the purpose and intent of these regulations, one can only conclude that the Office of Price Administration must be able to regulate prices from time to time. It must fix prices to meet various situations and emergencies. When this material was delivered by plaintiff to defendant on and after January 22, 1943, it was bound to deliver or transfer at a price not in excess of the maximum fixed by the OPA. This regulation governs not only the terms of a contract of sale and purchase at the time of making the contract, but it also regulates the terms at which goods may be delivered or transferred. As I see it, the plaintiff was prohibited by the aforesaid regulation from making this delivery or transfer at the contract price because it would be violating terms of said regulation.

When the amendment reducing the maximum price went into effect, plaintiff was in a dilemma. However, it did have a remedy. By virtue of the OPA regulation, the contract could not be carried out according to its terms. The price at which the goods were to be sold, as at the time of the delivery, was as much of the essence of the contract as any of the other provisions and controlling public policy barred delivery at that price. By act of government there was complete frustration of performance excusing the seller from performance as a matter of law. Matter of Kramer & Uchitelle, Inc., 288 N.Y. 467, 43 N.E.2d 493; Sanders v. M. Lowenstein & Sons, Inc., 289 N.Y. 702, 45 N.E.2d 457.

Plaintiff could have, therefore, refused to go on; the contract was rendered unenforceable by the amendment aforesaid. It need not have delivered any more material. It elected to do so, however. In payment he may not collect for it a price prohibited by the OPA regulations in effect at the time of delivery. It may and should collect from defendant the maximum price allowed which was $11.83 per ton.

Judgment for plaintiff in the sum of $1,173.31 with interest from April 23, 1943, and costs.

Settle order on notice.