**GOLDHILL TRADING & SHIPPING CO., S. A. PANAMA, v. CARIBBEAN SHIPPING CO.**

District Court, S. D. New York.
July 14, 1944.

Panger & Feder, of New York City, for petitioner.

Uterhart & Schaffer, of New York City, for respondent.

CONGER, District Judge.

This is a motion for an order directing that the controversies which have arisen between the petitioner and the respondent proceed to arbitration pursuant to § 4, Title 9 U.S.C.A., in accordance with the arbitration clause contained in a charter party agreement executed by the petitioner as charterer and the respondent as owner.

The arbitration clause is of the usual type and reads as follows: "That should any dispute arise between owners and the charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen, their decision or that of any two of them, shall be final, and for the purpose of enforcing, this agreement may be made a rule of the court. The arbitrators shall be commercial men."

Petitioner and respondent herein on or about March 10, 1944, had entered into a charter party agreement in and by which petitioner chartered a vessel of respondent's, for six weeks to be engaged in trade between ports in the United States and ports in the West Indies, Central America, Caribbean Sea, Gulf of Mexico, Mexico (North coast), excluding British, Dutch and French Guiana as the charterer might direct.

In the charter party agreement there were certain provisions for the obtaining by the owner, if required, certain approval certificates from the U. S. War Shipping Administration and the Cuban Maritime Commission.

Respondent is a Cuban corporation and the chartered vessel was flying the Cuban Flag.

The difference between the parties arises over the approval that was to be obtained from the Cuban Maritime Commission. On or about March 18, 1944, respondent, through its representative, applied to the Cuban Maritime Commission for the approval of the Charter Party and on March 24, 1944, the Cuban Maritime Commission disapproved the said charter party.

Respondent first contends that the non-approval of the charter party by the Cuban Maritime Commission made the agreement void; that the agreement to charter was merely a tentative one dependent on the approval of the Cuban Maritime Commission.

■ The court must in determining whether to compel arbitration first determine whether the contract in which the arbitration agreement is contained is valid. The reason for this is clear; if the contract is void, then the arbitration clause falls along with the remainder of the contract. Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978.

■ The respondent bases its resistance to this motion to compel arbitration upon Clause 31 of the charter party which reads as follows:

"Charterers have the privilege of employing the vessel between any ports within the trading limits stipulated in this Charter Party at their option; the Charter Party is subject to Owners or their agents securing approval of the Cuban Maritime Commission for such voyage, if required; Charterers to give owners or their agents exact itinerary for intended voyages not less than seven days in advance to enable Owners to secure such approval, but in the event Owners cannot secure approval charterers have the privilege of cancelling this Charter Party."

A reading of the above convinces me that it in no way affected the legality of the contract in its inception. The parties entered into a valid and legal contract. I do not regard this clause as being in the nature of a condition precedent; the compliance of which was required to give this contract life. I do regard it as one of the many duties incumbent upon the respondent to perform by and under the terms of the contract.

Clause 31 clearly shows that the intentions of the parties was that the Cuban Maritime Commission's approval was necessary only as to the itinerary of the proposed voyages of the vessel to be designated by the Charterers.

This goes to the question of performance of the agreement not affecting the validity of the agreement at its inception.

In this connection I call attention to Clause 30 of the Charter Party, which provides for the approval of U. S. War Shipping Administration; this clause reads as follows:

"This Charter Party is subject to Owners obtaining the approval of the War Shipping Administration, if required; and to their having valid American warrants for the vessel."

Clause 30 makes the Charter Party subject to the owners obtaining the approval of the War Shipping Industry. In other words, before the contract may have life the owners of the vessel must first obtain this approval; the obtaining of this approval is a condition precedent. Not so Clause 31. Apparently the parties had not the same intention with respect to the approval of the Cuban Maritime Commission. Had they so intended they could have very well used Clause 30 for both approvals or used a similar Clause re the approval of the Cuban Maritime Commission.

A reading of Clause 31 negatives any contention that a failure to obtain the Cuban approval voids the contract at its inception. The last sentence thereof reads as follows: "* * * in the event owners cannot secure approval, *charterers* have the privilege of cancelling this Charter Party."

Respondent also contends that even assuming that the Charter Party in its inception was valid, that it became illegal and invalid by frustration of performance immediately on the conceded disapproval of the Cuban Maritime Commission on March 24, 1944, and that thereby the arbitration clause fell when the agreement came to an end.

The difficulty that first presents itself is whether or not there has been complete frustration of the performance of the contract.

Respondent's duty was to take every reasonable step to secure the approval of the Cuban Maritime Commission. The Innerton, 5 Cir., 141 F.2d 931.

■ Respondent was under a contractual obligation which underlies all written agreements, i. e. the obligation of good faith in carrying out what is written. Brassil v. Maryland Casualty Co., 210 N.Y. 235, 104 N.E. 622, L.R.A.1915A, 629.

Petitioner claims that any frustration of performance of the contract was brought about and caused by the lack of good faith by respondent in carrying out its obligations under the Charter Party; that in violation of its contractual obligations and its legal duty respondent failed to perform its agreement in that it did not apply to the Commission for approval of the proposed itinerary of the vessel and further that it misrepresented said proposed itinerary to the Cuban Maritime Commission.

It will not be necessary to go into the specific details set forth by petitioner in its

moving papers in support of the above contentions. Suffice to say they raise serious issues.

The question now for determination is whether these issues are to be tried before the court or before the arbitrators.

This precise question is a troublesome one and is not free from difficulty, as has been made manifest by the different results reached and the divergent opinions of Judges. Matter of Aqua Mfg. Co. v. H. Warshow & Sons, 179 Misc. 949, 40 N.Y.S. 2d 564, affirmed 266 App.Div. 718, 41 N.Y.S. 2d 935. See also Pahlberg's Petition, 2 Cir., 131 F.2d 968, at page 970.

As illustrative of this divergence of opinion I refer to: Matter of Kramer & Uchitelle, 288 N.Y. 467, 43 N.E.2d 493, 141 A.L.R. 1497; Harry Lipman v. Haeuser Shellac Co., 289 N.Y. 76, 43 N.E.2d 817, 142 A.L.R. 1088, both decided the same day.

The Court of Appeals, in the matter of Kramer & Uchitelle, quote in support of its opinion the English case of Mulji v. Cheong Yue Steamship Co., Ltd., [1926] A.C. 497. In 1942 The House of Lords in Heyman v. Darwins, A.C. 356, took an entirely different stand on this question and virtually overruled the earlier case.

This Charter Party I have held was not illegal nor invalid for any cause at the time it was made.

The question of legality of the contract, of course, is for the Court. This question we have involves not the legality of the contract at its inception, but a question which arises under the contract and hence comes within the arbitration provision of the contract. In re Pahlberg's Petition, supra.

In his opinion in the above case, Judge Learned Hand, in support of his finding, refers and quotes at some length to Heyman v. Darwins, supra. The quotation from this English case is so apt that I repeat it:

"An arbitration clause is a written submission, agreed to by the parties to the contract, and, like other written submissions to arbitration, must be construed according to its language and in the light of the circumstances in which it is made. If the dispute is whether the contract which contains the clause has ever been entered into at all, that issue cannot go to arbitration under the clause, for the party who denies that he has ever entered into the contract is thereby denying that he has ever joined in the submission. Similarly, if one party to the alleged contract is contending that it is void ab initio (because, for example, the making of such a contract is illegal), the arbitration clause cannot operate, for on this view the clause itself also is void. But, in a situation where the parties are at one in asserting that they entered into a binding contract, but a difference has arisen between them whether there has been a breach by one side or the other, or whether circumstances have arisen which have discharged one or both parties from further performance, such differences should be regarded as differences which have arisen "in respect of," or "with regard to," or "under" the contract, and an arbitration clause which uses these, or similar, expressions should be construed accordingly." (1942) A.C. 356, 366.

And in the same case (not quoted by Judge Hand) we find the following:

"If, therefore, when parties have entered into a contract, circumstances arise before the performance of the contract is completed which, in the view of one party, bring the contract to an end by frustration, and, therefore, discharge both parties from further performance, but the other party does not agree, this is a difference about the applicability of the implied term and is just as much within the arbitration clause as if it were a difference about an express term of the contract."

I am satisfied that the subject matters of the dispute between the parties herein are within the bounds and limits of the Charter Party and, therefore, very properly covered by the arbitration clause.

Petitioner's motion to compel arbitration is granted.

Respondent in its answer counterclaimed to compel arbitration of an escrow agreement entered into by the parties. Petitioner agrees. So ordered.

Settle order on five days' notice.