ALBERT WALD. et al., Plaintiffs, *v.* LENOX AVENUE & 140TH STREET CORP., Defendant.

ALBERT WALD et al., Plaintiffs, *v.* 143 W. 140TH STREET CORP., Defendant.

ALBERT WALD et al., Plaintiffs, *v.* KERWOOD CONSTRUCTION CORP., Defendant.

ALBERT WALD et al., Plaintiffs, *v.* 133 W. 140TH STREET CORP., Defendant.

Municipal Court of the City of New York, Borough of Manhattan, January 25, 1950.

*John D. Mason* and *Irvin Husin* for plaintiffs.

*Charles Gottlieb* for defendants.

CHIMERA, J. Plaintiffs, a firm of attorneys, sue on two causes of action — 1. professional services rendered, and 2. account stated. These are four separate actions involving substantially the same facts and for convenience tried as one single case.

On or about December 28, 1948, plaintiffs and defendant in each of the actions entered into an agreement in writing reading as follows:

" The undersigned hereby retains WALD, HUSIN, MILLER, LEVY & DAVIS to obtain an increase of rent from the Office of Housing Expediter of Premises, in behalf of the undersigned Corporations;

" I [defendants] agree to pay them for their services in securing such increase and as his disbursements in this matter a minimum sum of $50 per application to be applied to the final fee, which fee shall be 50% of the total increase in rent obtained by our [their, intending plaintiffs'] efforts for the period of one year. This includes increases in rent secured under new voluntary leases, obtained after submission of applications.

" Payment of the minimum fee is not contingent upon success and is to be made upon the execution of this retainer; and the balance upon receipt of orders from the Housing Expediter

increasing such rentals in said premises." (Matter in brackets ours.)

The evidence, most of it conceded, indicates that through the efforts of plaintiffs and solely through their efforts, the Office of Housing Expediter (O.H.E.) did on October 26, 1949, issue certificates authorizing the defendants to increase rents retroactively to February 14, 1949. It is also conceded that the amount sued for in each of the actions under consideration is the amount to which the plaintiffs are entitled, if successful in this action; that demand was made for payment of such amount on October 28, 1949, and that the respective defendants have failed and still refuse to pay any part of the said sums.

The plaintiffs are content to rest on the foregoing facts. The respective defendants, however, take the position that the intervention of the "Sharkey Law" (Local Laws, 1949, No. 73 of City of New York, amdg. Administrative Code of City of New York, § U41–7.0 as theretofore amd.) places the issue at bar squarely within the realm of cases in which the doctrine of "frustration" has been applied by the courts.

Simply stated, the respective defendants contend that because of the enactment of the "Sharkey Law" the performance of the contract sued upon was frustrated and that in any event there is a failure of consideration for the promise to pay on their part, for the reason that the O.H.E. certificates of rent increase have become useless to effectuate what they contend is the underlying purpose of the agreement, namely: that the increases would be legally collectible from the tenants of the respective properties.

The court takes judicial notice of Local Law No. 73 of 1949, of the City of New York amending section U41–7.0 of the Administrative Code of the City of New York enacted October 7, 1949, and of the fact that since the commencement of this action, that law has been first declared unconstitutional by the Court of Appeals (*F. T. B. Realty Corp.* v. *Goodman,* 300 N. Y. 140) and later validated by an act of the Legislature (L. 1950, ch. 1, approved Jan. 10, 1950).

The pertinent provisions of the "Sharkey Law" make it unlawful: "for any person to demand, accept or receive from any tenant for the use or occupancy of any apartment a rent therefor greater than the rent which was being received by the landlord for said apartment on March first, nineteen hundred and forty-nine, *unless the commission shall by appropriate order authorize the collection of a higher rent for said apartment.*" (Administrative Code, § U41–7.0 subd. c.) (Emphasis ours.)

And also provide in part: " d. *Evictions.* No tenant shall be removed from any apartment * * * nor shall any action or other proceeding be commenced for the collection of any rent greater than the rent due and payable on the first day of March, nineteen hundred and forty-nine or for non-payment of such greater rent *unless the commission has certified that such rent* * * * *has before the commencement of such action or proceeding, been certified as just and reasonable* * * *.*" (Emphasis ours.)

The practical effect of the enactment of chapter 1 of the Laws of 1950 validating the " Sharkey Law " is that whereas at the time of the entry into the agreement only the certificate of the Office of Housing Expediter was necessary to enable a landlord to bring a proceeding to remove a tenant for nonpayment of increased rentals or to bring an action for such increased rentals, now the certificate of the temporary city rent commission is necessary as well.

Counsel for the respective defendants cites two groups of important cases in support of their position but careful study discloses that they are clearly distinguishable or otherwise not in point.

*Quaker Oats Co.* v. *City of New York* (295 N. Y. 527), an action for declaratory judgment involving the constitutionality of an ordinance of the City of New York furnishes little assistance to the court and its only apparent purpose in defendants' memorandum is to establish defendants' general thesis that " * * * rights and other legal relations are to be determined as of the time they are declared." (P. 536.)

The following are the cases in the first group cited by the defendants:

*Colonial Operating Corp.* v. *Hannan Sales & Service* (178 Misc. 879) was a summary proceeding for nonpayment of rent. Among other things, the lease provided that the premises were to be used " * * * only for a showroom for automobiles and automobile accessories." The court found as a fact that the intention of the parties was that the tenant was to conduct the business of selling new automobiles. Subsequent to the entry into possession and before the termination of the lease on or about January 1, 1942, the United States Office of Production Management issued an order prohibiting the sale of new automobiles and indeed the manufacture of same excepting for certain specified purposes.

In a scholarly opinion CRAWFORD, J., crystallized the settled law of the case as follows (p. 885): " More concisely, the rule may be stated thus, that if a statute is adopted after the making of the lease and it deprives the tenant of the beneficial use of the property — that is, prevents him from using it for the primary and principal purpose for which it was rented — the lease is terminated  *   *   *  *(b) the contract became impossible of performance by operation of law*  *   *  *." (Emphasis ours.)

Another lease case along the general lines of the *Colonial* case (*supra*) is *119 Fifth Ave., Inc.,* v. *Taiyo Trading Co.* (190 Misc. 123). Here, in an action for accrued rent, summary judgment was denied because of issues of fact found by the court. The lease provided for " the sale, assembly, storage and shipping of Japanese goods  *   *   *  and for no other purpose." After " Pearl Harbor ", December, 1941, the United States Alien Property Custodian intervened, padlocked the premises and took possession of the goods. The premises were subsequently abandoned by the tenants who though operating under domestic corporate status were considered enemy aliens by the Federal Government.

This case is valuable for the equally scholarly opinion of BENVENGA, J., who comes to the same conclusion as CRAWFORD, J., did in the *Colonial* case (*supra*) and for his splendid application of the rule of thumb first applied in the famous " *Coronation Cases* " particularly *Krell* v. *Henry* ([1903] 2 K. B. 740), of which, more hereafter.

In *Matter of Kramer & Uchitelle, Inc.* (*Eddington Fabrics Corp.*) (288 N. Y. 467; 3 proceedings) the parties entered into several separate written contracts to sell cotton grey goods at specified prices per yard, delivery to be made in August and September, 1941. The contracts provided for arbitration of all disputes.

On June 27, 1941, the Office of Price Administration (O.P.A.) issued price schedules setting forth lower prices for such goods and forbade sales at higher prices " regardless of any commitment theretofore ".

No delivery was made and buyer demanded that the matter be submitted to arbitration.

This matter came on by way of an appeal from an order staying the arbitration on the ground that the O.P.A. order had frustrated the contract and therefore there was nothing to arbitrate.

The majority opinion, RIPPEY, J., (p. 472) ruled: "The price at which the goods were to be sold as of the time of delivery was as much of the essence of the contract as any of its other provisions and *controlling public policy barred delivery at that price. By act of government there was complete frustration of performance* \* \* \* *as matter of law.* [Citing authorities.] \* \* \* Thus there was no 'controversy \* \* \*' \* \* \* when the contract was at an end the arbitration provision no longer existed or had any force whatsoever. [Citing authorities.]" (Emphasis ours.)

The dissenting opinion (LEHMAN, Ch. J., p. 474) disagrees with the decision but not on the question of law above discussed, which question it does not further consider or "attempt to decide".

Another case cited by defendants, *Matter of Kahn & Feldman, Inc., (Rothschild)* (265 App. Div. 471) is reiterative of the ruling in the *Kramer & Uchitelle* cases (*supra*). Here an order staying arbitration on a contract entered into in July, 1941, for the purchase and sale of raw silk was affirmed. The intervening *vis major* was the Federal Office of Production Management which issued General Preference Order M-22 calling for special authorization by the United States Director of Priorities before the sale could be consummated.

The dissenting opinion (UNTERMEYER, J., p. 471) did not quarrel with the general principle of law but went contra for the reason that there was no way of telling whether the contract could have been performed legally, no application for authorization having been made.

A careful examination of the foregoing first group of authorities relied upon by defendants should disclose that they have two important characteristics in common:

1. The intervention of a *vis major* which was not or could not have been anticipated and guarded against, and more important:

2. Such intervening *vis major* caused an impossibility of performance in whole or in part.

The following are the cases in group two cited by the defendants:

*Marks Realty Co.* v. *"Churchills"* (90 Misc. 370, 371 [1915]) was a case in which the defendant agreed to pay for an advertisement in a "souvenir and program" of an international yacht race "upon publication and delivery of one copy of the same." The race was called off because of the first World War.

It was held that the defendant was not liable for the contract price although plaintiff actually printed a program containing the advertisement and offered it for sale.

BIJUR, J., " * * * this contract falls within the well established rule that, where the performance of an agreement depends upon the happening of an event over which neither party has any control, an implied condition will be read into the agreement to the effect that the contract shall be abrogated upon the non-happening of such an event. See particularly *Krell* v. *Henry,* 1903, 2 K. B. 740. Also *Lorillard* v. *Clyde,* 142 N. Y. 456, 463; *Abbaye* v. *United States Motor Cab Co.,* 71 Misc. Rep. 454."

*Marks Realty Co.* v. *Hotel Hermitage Co.* (170 App. Div. 484 [1915]) a case involving the identical contract considered in the BIJUR, J., decision (*supra*), elaborates on that ruling: PUTNAM, J. (p. 485) " A program is for events to which it relates, and a souvenir ' cannot recall what has not taken place.' (*Marks Realty Co.* v. ' *Churchills* ', 90 Misc. Rep. 370.) The issue of the exhibit here, though styled program and souvenir, was anticipatory. Such an issue and sale for the convenience of plaintiff's assignor is not a ' publication ' in the sense of this contract. A condition is implied of two contestants being named for the time and place of a race; and where this feature is obvious, a failure, by giving up the expected contests, abrogates the contract. (*Lorillard* v. *Clyde* 142 N. Y. 456, 463.)"

*Ask Mr. Foster Travel Service, Inc.,* v. *Tauck Tours, Inc.* (181 Misc. 91) was an action for unpaid installments for services as agent pursuant to contract entered into on or about March 1, 1941, to display and distribute printed matter of an operator of sightseeing tours by bus. The tour service was discontinued as a result of an act of the Federal Government prohibiting sightseeing service by bus. It was held: CHURCH, J., (p. 92) " ' By act of government there was complete frustration of performance excusing the seller [in the instant case, the principal, the defendant] from performance as matter of law.' (*Matter of Kramer & Uchitelle, Inc.,* 288 N. Y. 467, 472.)"

Actually, the services were completed in this case but the Government's intervention rendered a portion of the service useless and while this decision was correct, the reasoning should have been based on the theory of the " *Yacht Club* " cases (*supra*).

The theory of frustration as it is now understood, and as it applies to cases falling in the second group was first applied in

the famous "*Coronation Cases*" of which *Krell* v. *Henry* ([1903] 2 K. B. 740) is a typical example. The contract in that case involved the hiring of a flat to witness the coronation procession which failed to take place owing to the illness of the king. The procession not having taken place, the defendant declined to pay the accrued rent. In holding that plaintiff was not entitled to recover the court said (p. 751): "Each case must be judged by its own circumstances. In each case one must ask oneself, first, what, having regard to all the circumstances, was the foundation of the contract? Secondly, was the performance of the contract prevented? Thirdly, was the event which prevented the performance of the contract of such a character that it cannot reasonably be said to have been in the contemplation of the parties at the date of the contract? *If all these questions are answered in the affirmative * * * I think both parties are discharged from further performance of the contract.*" (Emphasis ours.)

The defendants rely heavily upon the "*Yacht Club*", the "*Ask Mr. Foster*" and the "*Coronation*" cases (*supra*), arguing that the facts at bar spell out a neat parallel with those of the cited cases. The court finds no such parallel. Those were cases which as BIJUR, J., said in the "*Churchills*" case (*supra,* p. 371) depended "upon the happening of an event * * * " implied in the very essence of the agreement. Here nothing was implied. Payment was to be made to plaintiffs on the maturing of a specific act or service "* * * upon receipt of orders from the Housing Expediter increasing such rentals in said premises." And the plaintiffs were engaged "* * * to obtain an increase of rent from the Office of Housing Expediter".

The norm that must be applied to the facts at bar before a conclusion of "frustration" may be predicated will be found in these two groups of cases, but its application will not result in the conclusions drawn by the defendants.

Assuming that the "Sharkey Law" was an intervening act of Government which was not or could not have been anticipated and guarded against by the defendants, what actually was its effect?

Did it make the procurement of an O.H.E. certificate of increase of rent impossible or illegal? Did it prohibit employment of counsel to facilitate issuance of such certificate? Did it prohibit the defendants from accepting such service and paying for the same? Finally, did it render the certificate of the O.H.E. valueless? Obviously, no stretch of the imagination

would be required to answer all of these questions in the negative.

It is true that without an additional certificate from the temporary city rent commission, as matters now stand, the defendants will not be able to come into court to enforce collection of increased rents.

It is equally true, however, that without such a certificate of the Federal Office of Housing Expediter, the actual possession of an enabling certificate issued under and pursuant to the "Sharkey Law" would avail the defendants nothing in their quest for relief in the courts of the city of New York.

But there is another element in this case brought out on the examination of plaintiff Davis. It appears that by reason of his previous experience he was especially qualified to prosecute the applications in question. This fact and the clarity and conciseness of the language of the agreement, leaves the court with no other conclusion but that plaintiffs were retained to facilitate the procurement of such certificates and without implied condition whatsoever.

The cause of action sounding in account stated is dismissed but plaintiffs are entitled to judgment on their first cause of action for the amount demanded in the complaint, with interest from October 28, 1949.