In the Matter of the Arbitration between JACOB JOSEPHS et al., Copartners Trading under the Name of UNITED KIMONO Co., Respondents, and PACIFIC MILLS, Appellant.

First Department, June 18, 1952.

*Irving J. Seaver* of counsel (*Michael Feiring* and *Barney Bernstein* with him on the brief; *Feiring & Bernstein,* attorneys), for appellant.

*Mathias Naphtali* for respondents.

PECK, P. J. Petitioner as buyer and respondent as seller entered into a contract for the sale of a quantity of cloth at thirty-four cents a yard. The contract contained an arbitration clause. Shortly after the making of the contract in February, 1951, and prior to the time for delivery of the goods, an amendment to the General Ceiling Price Regulation effected a price ceiling on the subject of the sale at thirty-three and

one-half cents a yard. Respondent contends, however, that it was not able to ascertain the resulting price ceiling until August, 1951.

In due course petitioner gave respondent the required directions for assorting the goods and instructed respondent to bill and hold the goods on June 30, 1951. Respondent set the goods aside for the buyer as requested on June 30th, and mailed an invoice at the thirty-four-cent price. This invoice was not mailed until July 9th and on that same day the buyer wrote the seller stating that it considered the order cancelled, the indicated ground for the cancellation being the late billing. Nothing was suggested as to the price or price ceiling or impairment of the contract on that ground.

The seller refused to accept the cancellation and advised that the goods were being held subject to the buyer's shipping instructions. On August 13, 1951, the seller, asserting that it had just computed its ceiling price, issued a credit memorandum to the buyer reducing the price of the goods one-half cent a yard. The buyer still refused to take the goods and the seller instituted an arbitration proceeding, in which for the first time, by motion to stay the proceeding, the buyer raised the contention that the contract had been rendered unenforcible by the price regulation intervening between the date of the making of the contract and the time for delivery.

Petitioner's reliance was and is upon *Matter of Kramer & Uchitelle, Inc.* (288 N. Y. 467). In that case the position of the parties was reversed and the buyer was pressing for performance at the ceiling price while the seller was denying any obligation to so perform. The court held that the act of government excused the seller from performance. The law would not permit delivery at the contract price and the seller could not be compelled to deliver at the ceiling price.

While the opinion of the Court of Appeals referred to the ruling of the Price Administrator as putting an end to the contract, we take that reference in its context to mean that the contract could not be enforced according to its terms, that is at a price above ceiling, and the seller could not be required to supply the goods at other than the contract price. We do not regard the case as holding that a contract for the sale of goods is automatically terminated by an intervening price ceiling lower than the contract price, so that a seller will not be permitted to perform at the ceiling price. We see no reason why the seller should not be allowed to abide by the ceiling price or why the buyer should be entitled to avoid the contract when he is being

accorded even more favorable treatment than he bargained for. In sum, we do not regard the price regulation as voiding the contract but rather as setting a price above which it may not be performed.

The only objection to this interpretation is that it gives the seller an option as to whether or not he will perform at the lower price and it is suggested that the contract thus lacks mutuality. We think, however, that concepts of mutuality need not and should not be extended to dissolving all contracts by the mere intervention of a price ceiling. The ceiling is for the benefit of the buyer and if he receives that benefit he is getting all that he is entitled to, and if the seller is willing to abide by the ceiling, there is no reason why he should lose the benefit of his contract.

What is obviously required in such circumstances is that the seller ascertain the applicable ceiling price as soon as possible and promptly advise the buyer of his willingness to make delivery at that price. The time that passed here before the seller issued its credit memorandum engenders the suspicion that it did not act with due promptness. On the other hand, it contends that the determination of the applicable ceiling price required time and that it advised the buyer as soon as the price could be determined. Whether or not this is so is a question for the arbitrators, as is any issue which the buyer may raise as to the seller's delay in invoicing the goods, or any other defense which the buyer might assert.

All that we hold is that the contract did not automatically end with the interposition of the price ceiling and that the seller had such opportunity as was reasonable under the circumstances to advise the buyer of the ceiling price and its election to adopt it to the contract.

The order appealed from should be reversed, with $20 costs and disbursements to appellant, and the motion to stay arbitration denied.

DORE, COHN and CALLAHAN, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to appellant and the motion to stay arbitration denied. Settle order on notice.