Frank P. De Luca, J.
Petitioner herein seeks to stay arbitration proceedings which were initiated by the respondent, West Islip Teachers Association. Briefly stated, the facts are that the school board and the teachers ’ association signed a collective bargaining agreement on April 6,1971. The contract provided that the new teachers ’ salary schedule would be ‘ ‘ effective as of September 1, 1971.” As is now well known, on August 15,1971, the President of the United States issued an Executive Order providing for stabilization of prices, rents, wages and salaries. This was the so-called ‘ ‘ Phase I ’ ’ period in the economic battle against the inflationary pressures and monetary difficulties afflicting the Nation.
The school board, believing itself bound by the economic freeze of wages set forth in “Phase I,” declined to pay the salary increases scheduled to begin on September 1, and instead, paid its employees in accordance with the prior year’s contract. This continued until November 14, 1971 when the so-called “Phase II ’ ’ regulations went into effect. As of this latter date, petitioner has paid the teachers in accordance with the 1971-72 contract. Since nothing was said concerning the period September 1 to November 13, the teachers’ association served a demand for arbitration concerning retroactive salary and fringe benefits, which, concededly, were not paid to them in accordance with the new contract.
Thus, the issue here presented is whether arbitration may be compelled concerning retroactive salary and fringe benefits purportedly regulated by an agency of the Federal Government.
*832 The respondent teachers’ association takes the position that since there is an existing valid agreement to arbitrate, the clear mandate of CPLR 7501 dictates that the issue of arbitrability, as a matter of law, be determined, not by the courts, but by the arbitrator.
I find this contention unduly narrow and not applicable to the unusual situation which is here present. Suffice it to say, that the State Legislature could not reasonably have envisioned the use of emergency price and wage controls by the Chief Executive. Nevertheless, in interpreting questions-concerning the doctrine of Federal pre-emption, the Court of Appeals has indicated that arbitration could go forward only if there was concurrent jurisdiction by a State as well as a Federal agency. (Matter of Wolff Co. [Tulkoff], 9 N Y 2d 356.) Since there is exclusive Federal jurisdiction here, I find that the doctrine of Federal pre-emption is applicable. Thus, the further argument of respondents, that the petitioner would still have remedies available to it (presumably utilization of Federal Pay Board appeal regulations) subsequent to the findings of the arbitrator, is vitiated by the lack of State jurisdiction once Federal pre-emption is deemed to exist.
In another respect, the court takes note of a line of Court of Appeals decisions which stand for the proposition that public , policy disputes arising out of contracts containing arbitration clauses must be decided by the courts and not by private arbitrators. (Matter of Kramer & Uchitelle, 288 N. Y. 467 [Office of Price Administration ceiling prices]); Matter of Exercycle Corp., 9 N Y 2d 329 [although affirming arbitration, the court specifically indorsed the policy that arbitration will be stayed where the subject of the demand for arbitration is prohibited by statute or public policy]; Matter of Aimcee Wholesale Corp. v. Tomar Prods., 21 N Y 2d 621 [enforcement of State antitrust policy is not within the purview of commercial arbitration].)
There is little doubt that public policy regarding retroactive salary and fringe benefits has been and will continue, for some time to come, to be enunciated by the Federal Pay Board, Price Commission, Cost of Living Council, and the Congress of the United States.
Finally, the court has been apprised of two very recent decisions dealing with the impact of the President’s wage freeze upon teachers’ contracts. In both situations, the courts concluded that the collective bargaining agreements in question were superseded by the President’s Executive Order. (Carolin v. Board of Educ., Sup. Ct., Rockland County, Oct. 19, 1971; Cun *833 ningham v. Board of Educ., Sup. Ct., Niagara County, Nov. 12, 1971.) As in the case at bar, while the contracts were executéd prior to the date of the Executive Order, the new salary schedules were not made effective until a subsequent date.
Accordingly, the petitioner’s motion to stay arbitration on the matters submitted by the respondents is granted.